[No. 29163. *En Banc.* January 20, 1944.]

AVIRA LYNCH, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

[1]Reported in 145 P. (2d) 265.

*Vanderveer, Bassett & Geisness,* for appellant.

*T. J. Hanify, Laube & Laughlin, Little, Leader, LeSourd & Palmer, Hulbert, Helsell & Paul, L. B. Donley,* and *Grosscup, Morrow & Ambler,* for respondent Harris.

*The Attorney General, Ralph L. J. Armstrong,* and *L. E. O'Neill, Assistants,* for respondent Department of Labor & Industries.

*Clarence J. Coleman, amicus curiae.*

STEINERT, J.—This case involves a claim for widow's pension under what is commonly known as the workmen's compensation act. The facts, so far as the present proceeding is concerned, are not in dispute.

James Lynch, a coal miner, was formerly employed by L. J. Harris, doing business as Harris Coal Company. On or about October 27, 1937, Mr. Lynch suffered a physical impairment for which he made application for compensation by filing a claim with the department of labor and industries on March 16, 1939. The department rejected the claim, solely upon the ground that it had not been filed within the statutory period of one year following the occurrence of the alleged injury. No appeal appears to have been taken from that decision.

Thereafter, on April 15, 1940, Mr. Lynch died, and on April 27, 1940, his widow, Avira Lynch, filed with the department her application for a widow's pension, alleging in her petition that the death of her husband was the result of the injury sustained by him in October, 1937. The application was denied by the supervisor of the department on May 16, 1941, and on a rehearing before the joint board the action of the supervisor was sustained by order entered April 13, 1942. The ground upon which the widow's application was denied was that the workman's death was not the result of an injury sustained in the course of his employment, but was due solely to a diseased condition brought about by natural causes.

The claimant widow thereupon appealed to the superior court, and in a trial subsequently had before a jury a verdict was returned in her favor on December 9, 1942. The court on December 19, 1942, entered judgment on the verdict, reversing the decision of the joint board and directing the department to award the widow a pension.

The statute in existence at the time of the workman's alleged injury in October, 1937, and also at the time of his death on April 15, 1940, fixed the amount of a widow's pension in the sum of thirty-five dollars a month. While the widow's application for pension was still pending before the

department, and prior to the time of its disposition in the superior court, the legislature in 1941 amended the statute by increasing the amount of a widow's pension to fifty dollars a month. Laws of 1941, chapter 209, p. 625, § 1(a)(1), Rem. Supp. 1941, § 7679. However, as will be explained in more detail a little later, the 1941 act of the legislature was submitted to the vote of the people in the form of referendum measure number 22 and did not become fully effective until the adoption of the measure had been officially proclaimed by the governor on December 3, 1942.

Upon remand of the cause by the superior court to the department on December 19, 1942, the supervisor entered an order on January 6, 1943, allowing and fixing the widow's pension in the sum of thirty-five dollars a month; charging the employer's accident cost experience with the sum of forty-five hundred dollars; and setting up a statutory reserve of $7,339.42. That order was based upon the statute in force prior to the adoption of the 1941 act. The ruling of the supervisor was approved by the joint board on February 1, 1943.

The widow, deeming herself aggrieved by the decision of the department, in that it awarded her a pension of only thirty-five dollars a month, instead of fifty dollars as contended for, again appealed to the superior court. Upon a hearing before the court, without a jury, findings were made, in accordance with which judgment was entered dismissing the widow's appeal from the decision of the department. From that judgment the claimant widow appealed to this court.

The specific question presented on the appeal is whether the appellant widow is entitled to be paid a pension of fifty dollars a month, rather than the sum of thirty-five dollars a month, from and after December 3, 1942, the effective date of chapter 209, Laws of 1941, embodied in referendum measure number 22. She makes no claim for increased pension for any period prior to that date. Expressed somewhat more definitely with reference to the agreed facts in the case, the question is whether the widow shall now

receive a pension in accordance with the law as it existed on October 27, 1937, the date of the injury alleged to have been sustained by her husband, or whether she is entitled to receive a pension determined by the law which was enacted by the legislature in 1941, after the workman's death, and which did not become finally effective until its adoption by the electorate, as officially proclaimed on December 3, 1942.

Since the legislative act of 1941, chapter 209 (Rem. Supp. 1941, § 7679), merged into, and depends for its effectiveness upon, the subsequently adopted referendum measure, we shall, unless indicating otherwise, hereinafter refer to the 1941 act as referendum measure 22.

While the ultimate issue in this case concerns the extent of application of a legislative provision, the determination of that issue requires judicial construction of the act, or referendum measure, immediately in question. Counsel for the opposing parties invoke, and accordingly concede the necessity for, a construction of the measure by the court, and their divergent interpretations of its true meaning make all the more certain the necessity for such construction.

The fundamental purpose or object of all judicial construction or interpretation of legislative enactments is to ascertain, if possible, and give effect to, the intention of the lawmakers. *Layton v. Home Indemnity Co.*, 9 Wn. (2d) 25, 113 P. (2d) 538, and authorities therein cited.

In the process of arriving at the intent of the legislative body, the first resort of the courts is to the context and subject matter of the legislation, because the intention of the lawmaker is to be deduced, if possible, from what it said. *Behrens v. Commercial Waterway Dist. No. 1*, 107 Wash. 155, 181 Pac. 892, 185 Pac. 628; *In re Sanborn*, 159 Wash. 112, 292 Pac. 259.

Turning to the language of referendum measure 22, we find no provision therein making the increase in pension applicable to pension rights arising out of industrial injuries occurring prior to the effective date of the measure; on the other hand, the measure contains no saving clause

restricting its applicability to pension rights based upon injuries occurring subsequent to the effective date of the referendum measure. The language of the measure therefore affords us no light in our inquiry as to the intent of the lawmaking body which enacted it, and in consequence we must resort to other aids for judicial construction.

■ It is a fundamental rule in this state that a statute will be presumed to operate prospectively only, and that it will not be held to apply retrospectively in the absence of language clearly indicating such legislative intent. *Earle v. Froedtert Grain & Malting Co.*, 197 Wash. 341, 85 P. (2d) 264; *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991; *Layton v. Home Indemnity Co., supra; Nelson v. Department of Labor & Industries*, 9 Wn. (2d) 621, 115 P. (2d) 1014; *Cowiche Growers, Inc. v. Bates,* 10 Wn. (2d) 585, 117 P. (2d) 624; *State ex rel. Cooper v. Warnock*, 16 Wn. (2d) 697, 134 P. (2d) 706.

■ It is also the general rule in this state that awards payable under the workmen's compensation act are governed by the law in effect at the time the injury to the workman occurred. *Thorpe v. Department of Labor & Industries,* 145 Wash. 498, 261 Pac. 85; *Foster v. Department of Labor & Industries,* 161 Wash. 54, 296 Pac. 148, 73 A. L. R. 1012; *Sheldon v. Department of Labor & Industries,* 168 Wash. 571, 12 P. (2d) 751; *Sandahl v. Department of Labor & Industries,* 170 Wash. 380, 16 P. (2d) 623; *McKay v. Department of Labor & Industries,* 180 Wash. 191, 39 P. (2d) 997, 98 A. L. R. 990.

If referendum measure 22 be read and construed in the light of the rules hereinbefore stated, our conclusion must be that the provision for increased pensions to the widows of injured workmen speaks *in futuro* and includes only those cases where the injury to the workman occurs subsequent to the effective date of the measure, December 3, 1942. This would exclude the appellant from the benefit of the increase.

Appellant urges, however, that after the effective date of the 1941 statute "like compensation should be paid to those

injured before and after the effective date," and she contends that such an application of the law would in no true sense be retroactive. In support of her contention, she cites the case of *Talbot v. Industrial Ins. Commission,* 108 Wash. 231, 183 Pac. 84, 187 Pac. 410. In that case, the claimant workman became permanently and totally disabled on May 12, 1917, at which time the statute in force fixed the compensation to such disabled persons at a minimum of twenty dollars a month and a maximum of thirty-five dollars a month. The 1917 legislature amended the statute so as to provide that, where the character of the injury in case of permanent total disability is such as to render the workman physically helpless to the extent of requiring the constant services of an attendant for him, the monthly payment to such workman shall be increased twenty dollars. The amendment went into effect June 6, 1917, less than a month after the occurrence of the injury. In arriving at the conclusion that the injured workman was entitled to the benefit of the amendatory statute, this court gave no reason and cited no authority for its decision, but categorically stated:

"We are of the opinion that this is not the giving to the amendment a retroactive effect, contrary to the intention of the legislature. The power of the legislature to provide for such an increased monthly allowance in such cases is not questioned by counsel for the commission, the only question here presented being as to the legislative intent in enacting the amendment."

We shall not endeavor to minimize the force of that decision, although upon a casual reading it may appear to be at variance with what we believe to be the weight of general authority on the subject of the retroactive application of increased pensions. However, a close analysis of the language above quoted convinces us that it is not out of harmony with our present view of the law upon the subject or with the weight of authority thereon. It will be noted that in the *Talbot* case the court did not say that the allowance of the increased payment was in "no sense" a

retroactive application of the amendatory statute, but simply said that so to apply the amendment did not amount to giving it a retroactive effect *contrary to the intention of the legislature.* The court further specifically stated that the only question presented in the case was the legislative intent in enacting the statute. In other words, the court determined from all the circumstances and considerations connected with the particular legislation that it was the *intent of the legislature* that the amendment should be applied to injuries occurring before its effective date.

We may also say here that the "legislative intent" with which we are now concerned with reference to the enactment of chapter 209, Laws of 1941, is not merely that of the conventional legislative body composed of the senate and the house of representatives, but, as we shall shortly see, the question more particularly involves the intention of other legislative entities vitally connected with the final adoption of the act and of the referendum measure respectively. This brings us to the pith of our discussion and decision.

It is a rule of statutory construction that resort may be had to the history of the passage of a law under consideration. *State ex rel. Griffin v. Superior Court,* 70 Wash. 545, 127 Pac. 120; *State ex rel. Northwest Airlines, Inc. v. Hoover,* 200 Wash. 277, 93 P. (2d) 346; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478; *Ayers v. Tacoma,* 6 Wn. (2d) 545, 108 P. (2d) 348; Crawford, Statutory Construction 383, § 216; 2 Sutherland, Statutory Construction (3d ed.) chapter 50, p. 481.

In fact, from the record before this court, the "legislative intent" becomes clearly evident from the history of the passage of the law under consideration, and to disregard that history would be to ignore the above expressed principle that legislative intent is the paramount factor in construing a law.

We shall first consider the history of chapter 209, Laws of 1941, taken as the act of the customary lawmaking branch of the state government, and then consider the history of

referendum measure 22, regarded as the act of the people under their constitutionally reserved power.

Chapter 209, Laws of 1941, originated as senate bill No. 172 and was introduced in the legislature on February 5, 1941. It was passed by the Senate on March 13, 1941, and by the House of Representatives on March 12, 1941. Opponents of the bill urged the governor to veto it, on the ground, among others, that having no saving clause it might be contended that the legislative act operated retroactively. The governor thereupon, on March 21st, wrote to the attorney general in reference to the bill and made the following request for advice:

"Would you please advise me as to whether or not the increased benefits provided for in this bill would be applicable with respect to benefits growing out of injuries which occurred prior to the effective date of this act as well as injuries subsequent to the effective date?"

In response to that request the attorney general replied on March 24th, as follows:

"Our Supreme Court has several times held that the rights of parties under the Industrial Insurance Act are governed by the law in force at the time the injury occurred, and not the law in force at any subsequent time. [Citing cases.]

"In view of these authorities it is our opinion that Senate Bill 172, if it should become a law, would be applicable only to those injuries occurring subsequent to its effective date."

On receipt of that advice the governor approved the bill on March 24th, which was after the adjournment of the legislature. In approving a bill passed by the legislature, the governor acts in a legislative capacity and as part of the legislative branch of the state government. In *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478, we said:

"When referring to what the legislature intended, we must not forget that the governor, when acting upon bills passed by both houses of the legislature, is a part of the legislature, and acting in a legislative capacity, and we cannot therefore consider the intent of the house and the senate apart from the intent of the governor."

Accord: *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91.

■■ The attorney general is the legal adviser of the governor and other state officers. Washington Constitution, Art. III, § 21; Rem. Rev. Stat., § 11032 [P. C. § 6574-14]. It is reasonable to assume, under the circumstances here shown, that in approving the bill the governor acted upon the advice which he had sought and obtained from the attorney general. If he had exercised his power of veto, the bill would of course not have become a law. In so considering and approving the bill, the governor acted in his legislative capacity. It is therefore apparent that final legislative action on the bill as such was taken with the understanding and intention that it would operate only prospectively, that is, as to only those injuries which should be sustained by workmen after the effective date of the act.

We shall now consider the history of the act in its character of a referendum measure. After senate bill 172 was signed by the governor, a referendum was obtained submitting the act as passed by the legislature to the vote of the people. The initiative and referendum law provides that proponents and opponents of such measures may file arguments for and against their adoption and that the full text of all such measures, together with the arguments thereon, shall be published in pamphlet form and one copy thereof duly mailed to every voter in the state. Rem. Rev. Stat. (Sup.), § 5422, and Rem. Rev. Stat., §§ 5423, 5425 [P. C. §§ 2775, 2776, 2778].

Pursuant to these provisions of the statute, the proponents and opponents of referendum measure 22 filed arguments for and against its adoption. The argument of the proponents, urging the enactment of the measure, contained the following statement:

"After a deliberation of nearly two months, during which every argument pro and con was analyzed and weighed carefully, the House of Representatives passed the measure by a vote of 72 to 26, and the Senate passed it by a majority of 32 to 11.

"The special interests that are opposing Referendum Measure 22 urged the Governor to veto the bill. Governor Langlie, after a painstaking study, and acting on the advice of many experts, signed and approved the measure."

Then, in answer to the argument advanced by the opponents that, if the measure should be adopted, the reserves theretofore set up for pension cases would require an additional amount of thirteen million dollars at once, the argument of the proponents continued and concluded with this statement:

"No additional reserves are required for *past cases*. The Referendum Measure specifically provides that it relates only to *future accidents*. The Attorney General of the State of Washington has rendered an opinion that the measure is *not retroactive*." (Italics ours.)

The argument of the proponents was signed by the president of Washington State Federation of Labor. At the general election held in November, 1942, the measure was approved by the people and went into operation by proclamation of the governor on December 3rd of the same year.

The voters of the state in acting upon this measure were exercising their reserved power of legislation, under amendment seven of the Washington constitution. They were advised officially that the measure related only to future accidents and was not retroactive. The argument with reference to the referendum measure was published in pamphlet form and mailed to each voter for the express purpose of advising the electorate of the merits and applicability of the proposed legislation. It is to be presumed that the voters relied upon the information thus given to them in the manner provided by law.

In determining the meaning of legislation enacted through initiative or referendum, the courts have the right to look to, and may consider, the published arguments made in connection with the submission of such measures to the vote of the electorate. *People v. Fowler,* 32 Cal. App. (2d) 737, 84 P. (2d) 326; *Eugene School Dist. No. 4 v. Fisk,* 159 Ore. 245, 79 P. (2d) 262; 2 Sutherland, Statutory Construc-

tion (3d ed.) 507, § 5016. We thus have positive evidence of what the people intended when they voted to adopt the referendum measure.

■■■ Summing up the situation with reference to the determination of the legislative intent involved in this piece of legislation, we have as guides not only the presumption of prospective operation of the law, and the rule that retrospective operation will not be applied in the absence of language clearly indicating such legislative intent, but we also have concrete evidence of the intention of the governor in approving the act and of the people in subsequently adopting the referendum measure.

We are convinced that the legislative intent under which chapter 209, Laws of 1941, and referendum measure 22 were finally enacted was that the law should apply only to those cases wherein the injuries from which pension rights are derived occur subsequent to the effective date of the law, namely, December 3, 1942.

The judgment is affirmed.

BEALS, MILLARD, ROBINSON, and JEFFERS, JJ., concur.

GRADY, J. (dissenting)—I am unable to concur in the conclusion reached in the majority opinion that chapter 209 of the Laws of 1941, p. 624 (Rem. Supp. 1941, § 7679), and referendum measure number 22 apply only to those cases wherein the injury from which a right to compensation is derived occurs subsequent to the effective date of the enactment.

The appellant is not one who is seeking a widow's increased compensation for any period prior to the time of the taking effect of the statute providing for such increase. Her claim is that she is entitled to the increase from the effective date of the statute. The title and the applicable parts of the statute under consideration are as follows:

"AN ACT relating to extra-hazardous employments and to the compensation and remedies of workmen injured therein, and of their dependents, invalid children and beneficiaries in case of death; and amending sections 5 and 7 of chapter

74, Laws of 1911, as last amended by section [s] 2 and 3 of chapter 132, Laws of 1929 (sections 7679 and 7681, Remington's Revised Statutes; sections 3472 and 3475, Pierce's Code).

"*Be it enacted by the Legislature of the State of Washington:*

"SECTION 1. Section 5 of chapter 74, Laws of 1911, as last amended by section 2 of chapter 132, Laws of 1929 (section 7679, Remington's Revised Statutes; section 3472, Pierce's Code), is hereby amended to read as follows:

"Section 7679. Each workman who shall be injured in the course of his employment, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, and, except as in this Act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever.

"COMPENSATION SCHEDULE

"(a) . . . (1) If the workman leaves a widow or invalid widower, a monthly payment of fifty dollars ($50) shall be made throughout the life of the surviving spouse, to cease at the end of the month in which remarriage shall occur, . . ."

In very plain and unambiguous language, the statute provides that the widow of every workman coming under the act shall receive a monthly payment of fifty dollars while she remains unmarried. It is general in its terms. No discrimination is made between a widow whose deceased husband received the injury causing his death before the statute became effective and one who was injured after its effective date. There is no saving clause providing that it shall apply only to the latter class of widows.

The intention of the legislature and of the electorate is plain and manifest from the language used. It has but one meaning, and there is but one conclusion that can be drawn from it. When such is the case, a statute does not have to be construed or interpreted so as to ascertain the intent of the lawmaking body. There is no necessity to apply rules of construction and interpretation nor to consider the legislative history of the statute. *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360; *Island County v. Calvin*

*Philips & Co.,* 195 Wash. 265, 80 P. (2d) 840; *Ernst v. Kootros,* 196 Wash. 138, 82 P. (2d) ·126; *Carkonen v. Alberts,* 196 Wash. 575, 83 P. (2d) 899, 135 A. L. R. 209; *Spokane v. State,* 198 Wash. 682, 89 P. (2d) 826; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478; *State ex rel. Washington Mut. Sav. Bank v. Bellingham,* 8 Wn. (2d) 233, 111 P. (2d) 781; *Smith v. Department of Labor & Industries,* 8 Wn. (2d) 587, 113 P. (2d) 57.

A very clear and comprehensive statement of the rule is found in 25 R. C. L. 957, under the title "Statutes," as follows:

"A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to seach for its meaning beyond the statute itself. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless. In such a case arguments from the reason, spirit, or purpose of the legislation, from the mischief it was intended to remedy, from history or analogy for the purpose of searching out and justifying the interpolation into the statute of new terms, and for the accomplishment of purposes which the lawmaking power did not express, are worse than futile. They serve only to raise doubt and uncertainty where none exist, to confuse and mislead the judgment, and to pervert the statute. Affirmative discussion in such circumstances is not unlike argument in support of a self-evident truth. The logic may mislead or confuse. It cannot strengthen the pre-existing conviction."

The statute was first passed by the legislature in 1941. Pursuant to the legal process therefor, it had been submitted to the electorate in the precise form as passed by the legislature, and was adopted. Prior to that time, the legislature had, at its sessions of 1913, 1915, 1917, 1919, 1923, 1927, and

1929, amended the part of the original enactment of the workmen's compensation act of 1911 relating to the amount of compensation to be paid an injured workman and his dependents in case of his death. The language used was substantially the same and was general in its terms, making no distinction between a workman injured before the passage of the statute and one injured after its passage in so far as his right or the right of his dependents, in the event of his death, to receive the compensation provided for was concerned, except, in the 1917 act, there was a saving clause limiting the increased awards to those suffering from a permanent partial disability which had been incurred after its passage.

The saving clause did not include increased awards to the other beneficiaries named in the statute. The amendments of 1919 and 1923 contained saving clauses providing that the increased compensation should be payable only to those injured, or, in case of death, their dependents, after the taking effect of the acts. None of the other amendments had contained such a saving clause. I refer to these statutes because they show that general language was used in all of them, and, whenever the legislature intended there should be a discrimination between beneficiaries, it said so in plain terms by a saving clause. We must also bear in mind that the workmen's compensation act is remedial in its character and purpose. *Nelson v. Department of Labor & Industries,* 9 Wn. (2d) 621, 115 P. (2d) 1014. Such laws are to be liberally construed whenever construction is necessary to arrive at the legislative intent in order to carry out their purposes.

An examination of the various amendatory statutes referred to will show that there has been a progressive tendency to increase the compensation payable to injured workmen and their dependents. It is a social evolution and has been brought about by economic conditions. A widow whose husband was injured and died before the passage of a statute increasing the compensation is as much in need of the increase as is the one whose husband was injured and

died after its passage. If such a statute is general in its terms, it is not within our province, under the guise of construction and interpretation, to say that the legislature or the electorate intended there should be a discrimination between the two classes of widows.

The claims made by the respondents that, if the appellant is entitled to increased compensation from the effective date of the statute, the statute will have to be given a retroactive effect, and that the awards payable under the act are governed by the law in effect at the time the injury to the workman was incurred, extend to this court an invitation to enter into an academic discussion of rules of statutory construction and of the accrual of the right to benefits not applicable to this kind of case. There is no question of retroactive legislation involved here at all. No vested legal right acquired by the law or a contract is in any way affected or impaired, nor is there any new obligation or duty created by the statute. All the statute does is to increase the amount of compensation to be paid to certain beneficiaries under the act.

The same question now before us in principle was considered by this court in *Talbot v. Industrial Ins. Commission,* 108 Wash. 231, 183 Pac. 84, 187 Pac. 410. On May 12, 1917, Talbot sustained a permanent total disability. As of that date, the rate of compensation was the amount fixed by the department—not less than twenty dollars nor more than thirty-five dollars a month. The legislature, at its session in 1917, amended the law, which amendment became effective June 6, 1917, so as to provide an increase in the compensation to be paid one situated as was Talbot to the extent of twenty dollars a month in addition to that which had theretofore been allowable. It was claimed, as it is here, that to allow Talbot the increased amount would be to give the amendment a retroactive effect contrary to the intent of the legislature, it being assumed that the legislature had not intended it should have such an effect. This court held that to allow Talbot the increased sum after the taking effect of the amendment would not be giving it a retroactive

effect. The amendment did not purport to award anything prior to its becoming effective, but operated upon the then existing conditions and similar ones as they might arise in the future.

It is true, as stated in the majority opinion, that the court did not give any reason for its conclusion nor did it cite any authority. But that does not weaken the force of the decision. The language of the amendment was plain and unambiguous. The situation before the court was such that the statute automatically applied to it, and all the court had to do was to say so. No discussion or reasoning was necessary to arrive at the conclusion reached, and the court needed no precedent to enable it to decide the question presented.

The rule that awards payable under the workmen's compensation act are governed by the law in effect at the time the injury to the workman occurred, as stated in the majority opinion, is not applicable to this case for the reason that no preexisting substantive right is involved, but only the matter of an increase in compensation. This rule, so far as has been called to our attention, seems to have found its first expression in *Thorpe v. Department of Labor & Industries*, 145 Wash. 498, 261 Pac. 85, in which the benefit of an increase of an award was asked by a widow. The law providing for the increase had a saving clause which limited it to those cases where the workman was injured after its effective date, and, while other questions were discussed, that was the real basis for the rule as announced by the court. In three of the other cases cited in the majority opinion in support of the rule, the status of a party at a particular time determined the right to compensation, and one of them involved the application of the statute of limitations. None of them involved the question now before us.

It seems to me that the majority opinion is basically wrong in that it approaches the problem from the standpoint that the statute is ambiguous with reference to whether all

beneficiary widows are entitled to compensation from the effective date of the statute, or whether only those whose husbands received the fatal injuries after the statute took effect are entitled to compensation. I am not in accord with this view. If we adopt the view that we must resort to rules of construction and legislative history with reference to a statute as plain as is this one, then I fear that we are opening the door to every person who may consider himself adversely affected by a statute to ask the courts to arrive at what he would like to believe the statute means by the use of the rules and any favorable legislative history that may be found; and, if they do this, they will be construing statutes in the light of their background rather than by what their plain words import.

The judgment should be reversed, with direction to award the appellant the sum of fifty dollars a month subsequent to the effective date of referendum measure number 22.

BLAKE and MALLERY, JJ., concur with GRADY, J.

SIMPSON, C. J. (dissenting)—I am of the view that *Talbot v. Industrial Ins. Commission,* 108 Wash. 231, 183 Pac. 84, 187 Pac. 410, is controlling, and that that case announces the proper rule.