[No. 42011. En Banc. November 9, 1972.]

EDGAR H. OSBORN *et al., Petitioners,* v. DANIEL J. EVANS *et al., Respondents.*

*Roberts, Shefelman, Lawrence, Gay & Moch, George M. Mack, Lee R. Voorhees, Jr.,* and *William G. Tonkin,* for petitioners.

*Slade Gorton, Attorney General,* and *Robert F. Hauth, Assistant,* for respondents.

HAMILTON, C.J.—By Laws of 1971, 1st Ex. Sess., ch. 275, § 90, p. 1314, the legislature appropriated $20,000,000 to the Washington State Teachers' Retirement System in the following manner:

> NEW SECTION. Sec. 90. FOR THE STATE TEACHERS' RETIREMENT SYSTEM FUND:
>
> PROVIDED, That the State Teachers' Retirement System shall use interest earnings on accumulated state contributions and the amount appropriated by this section to pay pensions due for the 1971-73 biennium. Funds appropriated by this section shall be used only to the extent that interest earnings on accumulated state contributions are not sufficient to make pension payments and to pay the state's share of the system's operating costs under Chapter 41.32 RCW. For the 1971-73 biennium, the state shall not be required to appropriate funds for the "normal contribution" nor for the "unfunded liability contribution" required by RCW 41.32.401. The board of trustees shall determine pension payments, interest earning on accumulated state contributions, and the portion of funds appropriated by this section necessary for each quarter, and shall notify the state treasurer of the transfers necessary from the general fund to the teachers' retirement fund in accordance with RCW 41.32.401: PROVIDED FURTHER, That this section shall not affect member contributions under Chapter 41.32 RCW:
> General Fund Appropriation ................$20,000,000

The Governor vetoed the entire section, including the appropriation.

Relators initiated this action by way of an original application to this court for a writ of mandate compelling allot-

ment of the funds appropriated by the above legislative enactment, contending that the Governor's action in vetoing the section was invalid and that the legislature's action in appending the proviso was in derogation of vested contractual pension rights. The sum appropriated was not challenged.

In the meantime, and pending this court's decision, the legislature convened in a Second Extraordinary Session commencing January 10, 1972. The Governor by way of a supplemental budget request asked that the legislature "restore the $20 million appropriation by the 1971 Legislature for the Teachers' Retirement System." The Governor also, in his budget request, recognized that the "requested supplemental appropriation of $20 million, as proposed by the 1971 Legislature, does not contemplate full funding of the system." However, he urged deferral of further action pending completion of a study of alternative methods of funding public retirement systems by the Legislative Budget Committee.

Thereafter, the legislature, by way of Laws of 1972, 1st Ex. Sess., ch. 155, §§ 31 and 48, pp. 505 and 510, respectively, appropriated to the Teachers' Retirement System the sums of $20,000,000, unconditionally, and $63,729,478 conditioned upon a stated status of revenue in the general fund.[1] The total thus appropriated by the legislature in the 1972 First Extraordinary Session—$83,729,478—equaled the requested biennial budget estimate, as adjusted, submitted to the 1971 Legislature by the Board of Trustees of the Teachers' Retirement System pursuant to RCW 41.32.401. These appropriations were not vetoed by the Governor. The $20,000,000

---

[1]Laws of 1972, 1st Ex. Sess., § 48, p. 510, provides:

"There is hereby appropriated to the Teachers' Retirement System the sum of $63,729,478 or so much thereof as may be available from General Fund Surplus revenue in excess of $1,904,312,000 or in the event that House Bill No. 44 fails passage, the amount shall be $1,896,306,000 credited to the General Fund from all sources, excluding Federal funds for the 1971-73 biennium as determined by the Department of Revenue, State Treasurer, and the Office of Program Planning and Fiscal Management."

was subsequently allotted to the Teachers' Retirement System.

This court, on its own motion, set the cause for a hearing to determine whether the action of the legislature in the 1972 Extraordinary Session and the approval of the Governor rendered the issues raised in relators' original application for a writ of mandate moot.

As heretofore stated, the only underlying and determinative issues raised by relators' original action were two, namely, the validity of (1) the Governor's veto of Laws of 1971, 1st Ex. Sess., ch. 275, § 90, p. 1314, and (2) the legislative action in appending the proviso thereto, *supra*.

In contending that these issues have not become moot by virtue of the subsequent action of the legislature in unconditionally appropriating $20,000,000 by Laws of 1972, 1st Ex. Sess., ch. 155, § 31, p. 505, in response to the Governor's budget request "to restore the $20 million appropriation by the 1971 Legislature," relators tacitly admit and assert that favorable action upon this court's part with respect to the submitted issues would restore the vetoed $20,000,000 appropriation, thus resulting in a $40,000,000 total appropriation.

We are satisfied that it was not the intention of the legislature, in responding to the Governor's supplemental budgetary request, to provide a second and unrelated $20,000,000 appropriation to the Washington Teachers' Retirement System. Hence, it is our conclusion that the legislative restoration of the vetoed appropriation renders the issues submitted by relators moot. In so holding, we do not directly or indirectly reach or express any opinion upon the validity or invalidity of the Governor's action in vetoing Laws of 1971, 1st Ex. Sess., ch. 275, § 90, p. 1314, or upon the validity or invalidity of the proviso attached to such section by the legislature.

The action is dismissed on grounds of mootness.

FINLEY, NEILL, WRIGHT, and UTTER, JJ., concur.

ROSELLINI (dissenting)—I am not in agreement with the majority's decision to evade the problems presented in this case by declaring the questions moot. This court has more than once given its advisory opinion upon a question of great public import, where a question of law is otherwise left in doubt, the question is well argued in briefs, and the rendering of such an opinion would be of benefit to another branch of state government or a public agency in discharging its functions. *See Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972); *State ex rel. Distilled Spirits Institute, Inc. v. Kinnear,* 80 Wn.2d 175, 492 P.2d 1012 (1972) and cases cited therein.

This court recently has declared that the principle of systematic funding, adopted and followed by the legislature over a span of years, has become one of the vested contractual pension rights flowing to members of the teachers' retirement system. *Weaver v. Evans,* 80 Wn.2d 461, 495 P.2d 639 (1972). One question presented in this action is whether the Governor may exercise the veto power to impair that contractual right.

The Governor has exercised his veto power to annul an appropriation which was admittedly less than that required to maintain the systematic funding of the retirement system. While this suit was pending, the legislature, at his request, restored the appropriation. We are given good reason to believe that a similar situation may present itself again, in the foreseeable future; and if it does, the court will undoubtedly be asked again to pass upon the question. In the meantime both the legislature and the Governor must remain in doubt concerning the view which the court would take of such action.

I believe that the court should resolve this uncertainty, since we are told of no purpose which would be served by postponing a decision until the situation which inspired this lawsuit arises again. The parties in interest are before the court and all agree that the court would serve the public interest by giving its opinion upon the question. It may be possible, but I think it unlikely that the arguments ad-

vanced at some future date would be more lucid or more imaginative than those presented in the briefs before us. But in any event, the issue is not a complicated one, since this court, along with the majority of others, has already made the controlling decisions regarding pension rights of public employees.

Upon the merits of the question, it seems clear to me that the court must hold that the Governor, when he exercises the legislative function involved in the veto (*see Lynch v. Department of Labor & Indus.,* 19 Wn.2d 802, 145 P.2d 265 (1944)), does so encumbered by the same obligations which rest upon the legislature. The legislature, having undertaken to provide a pension system for public employees such as teachers, has assumed an obligation to maintain that system in a responsible manner. The legislature itself, through its past acts in adopting and implementing a policy of seeking actuarial soundness for the retirement system, has indicated that in its judgment, such a policy is necessary for responsible maintenance of the system.

Of course, as we have consistently recognized, rigid adherence to any system adopted by the legislature is not required. The legislature does not abandon its duty if it makes changes which strengthen and improve the system. As we said in *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956), to be sustained, modifications of a pension system must be reasonable and when they affect pension rights, they must bear some reasonable relation to the theory of a pension system and its successful operation.

It seems to me that there can be no question that the legislature, had it failed to make any appropriation in the 1971-73 biennium to the teachers' retirement fund, would thereby have effected a modification in the system which clearly could not benefit the system.

While I do not think that the legislature, in enacting RCW 41.32.401, intended to bind future legislatures to accept without question the recommendations of the board of trustees, I do think that the section requires the legisla-

ture to determine in good faith what appropriation is necessary to "establish and maintain an actuarial reserve adequate to meet present and future pension liabilities of the system" in that biennium and to make that appropriation.

In my opinion, the legislature has a solemn duty to perform its contract with the teachers of this state, and that means that the legislature must make the necessary appropriation in each biennium and not trust to future legislatures to correct its omissions. The Governor, acting in a legislative capacity, in reviewing the legislation sent to his desk for approval, has the same duty to see that the contracts of the state are honored. Where, as here, he vetoed an appropriation obviously inadequate to cover the state's obligations to its teachers in the 1971-73 biennium, he inevitably impaired the contractual rights of those teachers.

I do not lose sight of the principle that the legislature has a broad discretion in enacting laws and that the Governor has a similar broad discretion in vetoing them. But where the contracts of the state are involved, the discretion of the legislature is strictly limited by the contracts clause of the federal constitution. *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 211 P.2d 651 (1949) and cases cited therein.

In my opinion, when the legislature enacted Laws of 1971, 1st Ex. Sess., ch. 275, § 90, p. 1314, appropriating $20,000,000 for the teachers' retirement system, that act constituted a partial performance of its contractual duty to the teachers of this state. The Governor had a corresponding duty to see that the legislative performance was given full effect, since the appropriation was obviously inadequate to cover the amounts which would be needed in the biennium for the sound administration of the system. That duty was breached when he vetoed the provision.

Of course, the Governor in this case made amends by asking for restoration of the appropriation. I feel reasonably certain that, if the legislative and executive departments are given the benefit of an opinion of this court concerning their responsibilities under the state's contracts,

the situation which gave rise to this lawsuit will not reoccur.

HUNTER and HALE, JJ., and RYAN, J. Pro Tem., concur with ROSELLINI, J.