

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 2 7 2018
CHIEF JUSTICE

This opinion was filed for record

at __8:00 a.m.__ on __Dec 27, 2018__

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| END PRISON INDUSTRIAL COMPLEX, | NO. 95307-4 |
| Respondent, | |
| v. | EN BANC |
| KING COUNTY, | |
| Petitioner. | Filed __DEC 2 7 2018__ |

GORDON McCLOUD, J.—End Prison Industrial Complex (EPIC) argues

that the ballot title for a King County property tax increase lacked information

required by *former* RCW 84.55.050 (2012).[1] To resolve that dispute, the court

must compare the ballot title to that measure it describes—King County Ordinance

---

[1] RCW 84.55.050 has been amended twice since voters approved the property tax increase at issue in this case. LAWS OF 2018, ch. 46, § 3; LAWS OF 2017, ch. 296, § 2.

17304—to see if the title lacks some description of the ordinance that former RCW

84.55.050 requires. But RCW 29A.36.090 provides that ballot title objections

must be raised within 10 days of the public filing of that ballot title. We therefore

hold that EPIC's claim, which it brought nearly 4 years after the ballot title at issue

in this case was filed, is untimely.[2]

We reverse the decision of the Court of Appeals and affirm the judgment of

the superior court.

FACTUAL BACKGROUND

I.    King County's Proposed Tax Increase and Its Ballot Title

The King County Council (Council) adopted Ordinance 17304 in April

2012. Clerk's Papers (CP) at 88-95. That ordinance authorized a special election

for King County voters to decide whether to increase property taxes by a levy lid

lift. *Id.* As described in Ordinance 17304, the levy lid lift would increase the

property taxes for nine years as follows:

---

[2] The prosecuting attorney filed the ballot title on May 24, 2012. Clerk's Papers at 248-49. Excluding weekends and the Memorial Day holiday, as RCW 29A.36.090 requires, the 10-day objection period ended on June 8, 2012. EPIC filed its lawsuit 3 years, 10 months, and 19 days later—on April 27, 2016.

a regular property tax levy in excess of the levy limitation contained in chapter 84.55 RCW for nine consecutive years, commencing in 2012, with collection beginning in 2013, at a rate in the first year not to [sic] $0.07 per one thousand dollars of assessed value. In accordance with RCW 84.55.050, this levy shall be a regular property tax levy, subject to the statutory rate limit of [former] RCW 84.52.043 [(2012)].

*Id.* at 92.

Former RCW 29A.36.071(1) (2012) provides that the King County prosecuting attorney must draft the ballot title for any measure going to county voters.[3] The Council nonetheless suggested its own ballot title in Ordinance 17304. The Council's suggested ballot title stated:

> The King County council has passed Ordinance [17304] concerning funding for a replacement facility for the Children and Family Justice Center. This proposition would authorize King County to levy an additional property tax to provide funding for capital costs to replace the Children and Family Justice Center, which serves the justice needs of children and families. It would authorize King County to levy an additional regular property tax of $0.07 per $1,000 of assessed valuation for collection in 2013. *The 2013 levy amount would become the base upon which levy increases would be computed for each of the eight succeeding years, all*

---

[3] The county prosecuting attorney remains responsible for drafting ballot titles for questions submitted to county voters under the present version of RCW 29A.36.071(1). The statute has been amended in other ways since 2012. LAWS OF 2017, ch. 328, § 4; LAWS OF 2015, ch. 172, § 3.

3

*as provided in Ordinance [17304].* Should this proposition be:

Approved? _____

Rejected? _____

*Id.* at 93 (emphasis added).

The prosecuting attorney did not follow the Council's suggested language word for word. Instead, he drafted the following ballot title for Ordinance 17304's proposed levy lid lift:

Proposition No. 1
Children and Family Services Center Capital Levy

The King County council passed Ordinance No. 17304 concerning a replacement facility for juvenile justice and family law services. This proposition would authorize King County to levy an additional property tax *for nine years* to fund capital costs to replace the Children and Family Justice Center, which serves the justice needs of children and families. It would authorize King County to levy an additional regular property tax of $0.07 per $1,000 of assessed valuation for collection in 2013. *Increases in the following eight years would be subject to the limitations in chapter 84.55 RCW, all as provided in Ordinance No. 17304.* Should this proposition be:

◯ Approved

◯ Rejected

*Id.* at 251 (Ex. G; voters' pamphlet excerpt) (boldface omitted) (emphasis added).

4

Even so, RCW 29A.36.090's 10-day objection period passed in June 2012 with no objections.

Then, at the August 2012 election, a majority of King County voters approved the proposed levy lid lift. And in 2013, King County began assessing and collecting a property tax levy in accordance with Ordinance 17304 and in excess of its preelection levy lid. *Id.* at 270 (Ex. I; election results), 277-81 (Decl. of Hazel Gantz).

For 2013, King County added the rate of $0.07 per $1,000.00 of assessed valuation to its previous overall rate and multiplied the new combined rate by the total value of taxable property. *Id.* at 278-79. That calculation produced the new total permissible levy dollar amount, and King County proceeded to levy almost exactly that amount. *Id.*

For the following years, King County multiplied the 2013 levy dollar amount by the standard statutory growth limit of 101 percent to produce the year's new total permissible levy dollar amount. *Id.* at 280; *see also* RCW 84.55.010 (imposing limit factor on levy increases), .005(2) (generally defining "limit factor" as 101 percent). King County again proceeded to levy nearly that amount. CP at 280 (Decl. of Gantz).

King County plans to proceed in that fashion for the remainder of the nine years of the levy lid lift. *Id.* at 281. When the nine years have passed, the levy lid will "revert," according to King County, to what it would have been had voters not lifted the lid in 2012. *Id.*; *see also* former RCW 84.55.050(5). That is, King County plans to compute its 2022 levy as though it had just been applying the 101 percent growth rate to its levy lid every year since 2012. CP at 281 (Decl. of Gantz).

II.     EPIC's Lawsuit against King County

In April 2016, EPIC sued King County over its implementation of the levy lid lift. EPIC acknowledged that King County had lawfully assessed increased property taxes pursuant to the levy lid lift in the lift's first year, 2013. *Id.* at 8-10 (Compl.). EPIC instead argued that King County's assessment of increased property taxes from 2014 onward was unlawful. *Id.* at 10-11. EPIC contended that the ballot title for the levy lid lift omitted a piece of information that former RCW 84.55.050 required: an express statement that the 2013 levy would form the basis for computing levies for the following eight years of the lid lift. *Id.* at 9-11. EPIC argued that the statement that the Council had included in its suggested ballot title—"[t]he 2013 levy amount would become the base upon which levy increases

would be computed for each of the eight succeeding years, all as provided in Ordinance [17304]," *Id.* at 93 (Ordinance 17304)—would have satisfied former RCW 84.55.050's express-statement requirement. *Id.* at 10 (Compl.). But it concludes that the prosecutor's decision to omit that phrase from the official ballot title deprived King County of the authority to assess increased property taxes beyond 2013. EPIC asked the superior court to declare the assessment of the increased property taxes from 2014 onward unlawful and to enjoin their assessment going forward. *Id.* at 15-16.

King County moved for summary judgment of dismissal. It argued that EPIC's claim was most properly characterized as a challenge to Ordinance 17304's ballot title and, hence, that it was untimely under RCW 29A.36.090's 10-day time limit for objecting to ballot titles. *Id.* at 36-59 (King County's Mot. for Summ. J.). EPIC responded that RCW 29A.36.090 did not apply because its claim did not accrue until King County assessed increased property taxes in the second year of the levy lid lift, 2014, when "King County began to act inconsistently with the ballot title approved by voters." *Id.* at 374 (EPIC's response). Thus, EPIC characterized its claim not as a ballot title objection to which RCW 29A.36.090

applied but as an effort to enforce substantive limitations supposedly created by the wording of the ballot title as opposed to the language of Ordinance 17304. *Id.*

The superior court agreed with King County and dismissed EPIC's claim as untimely. *Id.* at 478 (order). The Court of Appeals reversed. *End Prison Indus. Complex v. King County*, 200 Wn. App. 616, 402 P.3d 918 (2017). We granted review. *End Prison Indus. Complex v. King County*, 190 Wn.2d 1007 (2018).

## ANALYSIS

There is no dispute about the timing or sequence of events here. Instead, the parties contest whether EPIC's claim is subject to RCW 29A.36.090's 10-day time limit on ballot title objections. That is a purely legal question that we review de novo.[4]

---

[4] This court reviews a trial court's decision to grant a motion for summary judgment de novo. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999) (citing *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992); CR 56(c)). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

I.    RCW 29A.36.090 Requires Objectors To File Their Ballot Title Challenges within 10 Days

A ballot title must meet certain accuracy and clarity requirements in the way that it informs voters about the underlying proposed measure. RCW 29A.36.071; RCW 29A.72.050. A ballot title for a levy lid lift must meet certain additional requirements. RCW 84.55.050.

RCW 29A.36.090 permits anybody to object to the ballot title of a county measure, which is publicly available at the county auditor's office as per RCW 29A.36.080. RCW 29A.36.090 also waives the usual court costs for litigating such an objection.

Critically, though, the objection must be raised within 10 days—before the ballot title goes to the voters. The objection is then litigated as follows:

> If any persons are dissatisfied with the ballot title for a local ballot measure that was formulated by the . . . prosecuting attorney . . . , they may at any time within ten days from the time of the filing of the ballot title, not including Saturdays, Sundays, and legal holidays, appeal to the superior court of the county where the question is to appear on the ballot, by petition setting forth the measure, the ballot title objected to, their objections to it, and praying for amendment of it. The time of the filing of the ballot title, as used in this section in determining the time for appeal, is the time the ballot title is first filed with the county auditor.

> A copy of the petition on appeal together with a notice that an appeal has been taken shall be served upon the county auditor and the official preparing the ballot title. Upon the filing of the petition on appeal, the court shall immediately, or at the time to which a hearing may be adjourned by consent of the appellants, examine the proposed measure, the ballot title filed, and the objections to it and may hear arguments on it, and shall as soon as possible render its decision and certify to and file with the county auditor a ballot title that it determines will meet the requirements of this chapter. The decision of the superior court is final, and the ballot title or statement so certified will be the established ballot title. The appeal must be heard without cost to either party.

RCW 29A.36.090.

Thus, in order to appeal the prosecutor's decision on a ballot title, the objector must file a petition with the superior court "setting forth the [proposed] measure [and] the ballot title objected to." *Id.* The petition must explain how a comparison between that proposed measure and the ballot title reveals defects in the ballot title.[5] The superior court then "examine[s] the proposed measure, the ballot title filed, and the objections to it." *Id.* That is, the superior court must

---

[5] To be sure, there may be circumstances where a comparison is unnecessary. For example, facially inflammatory language might violate RCW 29A.72.050(1)'s requirement that a ballot title be "impartial." *See* RCW 29A.36.071(1) (applying RCW 29A.72.050's requirements to local ballot titles).

compare the ballot title to the proposed measure to determine whether any objection to the ballot title has merit.

This statute also requires superior courts to decide these objections quickly and conclusively. The petition must be filed within 10 days. The superior court must conduct its work "immediately" and resolve the matter "as soon as possible." *Id.* That court's resolution "is final, and [its] ballot title . . . will be the established ballot title."[6] *Id.* As we have said of similar statutes, "Timing is clearly important. There is a strong interest in the finality of ballot title decisions." *Kreidler v. Eikenberry*, 111 Wn.2d 828, 833, 766 P.2d 438 (1989) (commenting on former RCW 29.79.040-.060 (1988)).

## II. The Alleged Deficiency That EPIC Highlights Could Have Been Raised in 2012, in Compliance with RCW 29A.36.090's 10-Day Deadline

EPIC argues that RCW 29A.36.090's 10-day time limit should not govern this claim because nobody could have known in 2012 that King County would

---

[6] *But see Kreidler v. Eikenberry*, 111 Wn.2d 828, 837, 766 P.2d 438 (1989) ("Despite the unavailability of either direct or discretionary review, we may, in unusual circumstances, exercise our inherent power of review to determine if the trial court's decision is arbitrary, capricious, or contrary to law." (citing *Marino Prop. Co. v. Port Comm'rs*, 97 Wn.2d 307, 644 P.2d 1181 (1982))).

11

implement the levy lid lift in a manner inconsistent with the ballot title. In other words, the ballot title seemed just fine in 2012: it lacked an express statement about how subsequent levies would be calculated, so one could assume that King County intended to lift the levy lid for 2013 only. Only after King County continued to assess the increased property taxes associated with the levy lid lift in 2014 did EPIC realize that King County intended the levy lid lift to last for nine years.

The problem with EPIC's argument is that both the ballot title and Ordinance 17304, the proposed measure underlying the ballot title, were publicly available in 2012. So even in 2012, voters could have figured out whether Ordinance 17304 differed from the ballot title. And even in 2012, voters could have figured out that if they differed, the ballot title would not govern—the ordinance would: Ordinance 17304, if approved, would take on the force of law and govern what King County can and cannot do with respect to the levy lid lift. *Sane Transit v. Sound Transit*, 151 Wn.2d 60, 71-73, 85 P.3d 346 (2004); *cf. Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2000) (recognizing that "a statute [is] enacted through the initiative process" (citing *Brower v. State*, 137 Wn.2d 44, 52, 969 P.2d 42 (1998); *Gerberding v. Munro*, 134

Wn.2d 188, 196, 949 P.2d 1366 (1998); *State ex rel. O'Connell v. Meyers*, 51 Wn.2d 454, 458, 319 P.2d 828 (1957))).

And Ordinance 17304 does not describe the tax increase structure that EPIC advances. Instead, it describes the taxation structure that King County has implemented.

We apply our usual rules of statutory interpretation to laws, like Ordinance 17304, enacted by the people. *Amalg. Transit Union*, 142 Wn.2d at 205 (citing *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981); *Gibson v. Dep't of Licensing*, 54 Wn. App. 188, 192, 773 P.2d 110 (1989)); *see also Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002) (holding that a statute's plain meaning is determined by its text and context). Under those rules, a ballot title may aid interpretation of the underlying measure.[7] But we will not consult the ballot title when the meaning of the underlying measure is plain.

---

[7] *Cf. Amalg. Transit Union*, 142 Wn.2d at 205-06 ("[I]f there is ambiguity in the enactment, the court may examine the statements in the voters pamphlet in order to determine the voters' intent." (citing *State v. Thorne*, 129 Wn.2d 736, 763, 921 P.2d 514 (1996); *Biggs v. Vail*, 119 Wn.2d 129, 134, 830 P.2d 350 (1992); *Lynch v. Dep't of Labor & Indus.*, 19 Wn.2d 802, 812-13, 145 P.2d 265 (1944))).

In this case, the meaning of Ordinance 17304 is plain. Section 3 contains the levy lid lift that voters authorized. That section describes the levy lid lift as "a regular property tax levy in excess of the levy limitation contained in chapter 84.55 RCW for nine consecutive years, commencing in 2012, with collection beginning in 2013, at a rate in the first year not to [sic] $0.07 per one thousand dollars of assessed value." CP at 92 (Ordinance 17304). That text indicates that the ordinance would authorize a tax increase "for nine consecutive years." *Id.* There is nothing ambiguous about that. Nor is there anything ambiguous about how high the ordinance would lift the levy lid: "$0.07 per one thousand dollars of assessed value." *Id.*

Context confirms what is apparent in the text of section 3. Ordinance 17304 describes the levy lift as lasting nine years. *Id.* at 88, 91. It also contains suggested ballot title language confirming that the levy lid lift lasts for nine years:[8]

> [This proposition] would authorize King County to levy
> an additional regular property tax of $0.07 per $1,000 of
> assessed valuation for collection in 2013. The 2013 levy

---

[8] EPIC urges us to overlook the suggested language because it is "not part of the law, since only the prosecuting attorney may draft the ballot title." EPIC's Suppl. Br. at 15. We do not think it appropriate to ignore the suggested language, however. It is, after all, an attempt by the drafters to describe the effect of the levy lid lift authorized under section 3.

amount would become the base upon which levy increases would be computed for each of the eight succeeding years
. . . ."

*Id.* at 93 (Ordinance 17304). That description aligns with section 3 and unambiguously contemplates the taxation structure that King County has implemented. *See supra* pp. 5-6 (describing King County's implementation of the levy lid lift). Indeed, EPIC recognizes as much. EPIC's Suppl. Br. at 6-7.

Accordingly, Ordinance 17304 placed the people on notice of King County's plan. Anybody who thought that the ballot title failed to expressly state something that former RCW 84.55.050 required could have raised that objection when the ordinance and the ballot title first became public, in 2012. EPIC's argument—that RCW 29A.36.090's 10-day time limit should not apply to its claim because nobody could have known what King County would do—therefore fails.

III. RCW 29A.36.090's 10-Day Time Limit Applies to Objections to Ballot Titles Based on Former RCW 84.55.050

EPIC also contends that RCW 29A.36.090's 10-day time limit should not apply to its claim because RCW 29A.36.090 does not apply to objections to ballot titles based on former RCW 84.55.050.

15

Former RCW 84.55.050 is complicated. As relevant to this case, its subsections (3), (4), and (5) require a ballot title for a levy lid lift to contain an express statement in certain instances. Subsection (3), for example, states,

> After a levy authorized pursuant to this section is made, the dollar amount of such levy may not be used for the purpose of computing the limitations for subsequent levies provided for in this chapter, unless the ballot proposition *expressly states* that the levy made under this section will be used for this purpose.[9]

---

[9] Subsections (4) and (5) of former RCW 84.55.050 state,

> (4) If expressly stated, a proposition placed before the voters under subsection (1) or (2) of this section may:
>     (a) Use the dollar amount of a levy under subsection (1) of this section, or the dollar amount of the final levy under subsection (2) of this section, for the purpose of computing the limitations for subsequent levies provided for in this chapter;
>     (b) Limit the period for which the increased levy is to be made under (a) of this subsection;
>     (c) Limit the purpose for which the increased levy is to be made under (a) of this subsection, but if the limited purpose includes making redemption payments on bonds, the period for which the increased levies are made shall not exceed nine years;
>     (d) Set the levy or levies at a rate less than the maximum rate allowed for the district; or
>     (e) Include any combination of the conditions in this subsection.
>     (5) Except as otherwise expressly stated in an approved ballot measure under this section, subsequent levies shall be computed as if:
>     (a) The proposition under this section had not been approved; and
>     (b) The taxing district had made levies at the maximum rates which would otherwise have been allowed under this chapter during the years levies were made under the proposition.

(Emphasis added.) When this express-statement requirement applies, the ballot title must comply with it.

EPIC argues that objections based on a ballot title's noncompliance with former RCW 84.55.050 are not subject to RCW 29A.36.090 because RCW 29A.36.090 directs a superior court hearing a ballot title objection to "certify to and file with the county auditor a ballot title that it determines will meet the requirements of *this chapter*." (Emphasis added.) We agree that a superior court must ensure that an objected-to ballot title complies with chapter 29A.36 RCW. That directive does not, however, limit the superior court's ability to ensure that an objected-to ballot title also complies with any other applicable requirements, including those in former RCW 84.55.050. Indeed, RCW 29A.36.090 permits "any . . . dissatisfied" person to object to a local ballot title. That language is broad and does not limit dissatisfactions or objections to those rooted in chapter 29A.36 RCW.

EPIC further asserts that objections based on former RCW 84.55.050 are not subject to RCW 29A.36.090's 10-day time limit because former RCW 84.55.050 does more than regulate levy lid lift ballot titles. In EPIC's view, former RCW 84.55.050 imbues the ballot title for a levy lid lift with the force of law. EPIC

17

argues that the phrases "unless the ballot title expressly states," "[i]f expressly stated," and "[e]xcept as otherwise expressly stated" of subsections (3), (4), and (5), respectively, demonstrate that unless the ballot title satisfies the express-statement requirement, a local government's taxing authority is limited.

The phrases that EPIC highlights contain strong language, to be sure. But they do not change the fact that a challenge to what a "ballot title expressly state[s]" constitutes a ballot title challenge. And the legislature mandated that ballot title challenges must be brought within 10 days and resolved before the election. RCW 29A.36.090.

Moreover, as this case demonstrates, making ballot title objections based on former RCW 84.55.050 subject to the statutory 10-day time limit makes sense from a policy perspective. The levy lid lift at issue in this case increased property taxes to fund a construction project estimated to cost between $200 million and $210 million. CP at 92 (Ordinance 17304). As of February 2015, approximately 14 months *before* EPIC filed its complaint, King County formed a $154 million contract with a construction company to carry out the project's design and building work. Pet. for Review (Decl. of Jim Burt, App. C). As of February 2017, only 10 months after EPIC filed its complaint, King County had already spent more

18

than $31 million on the construction project. *Id.* If a levy lid lift ballot title were to carry substantive force under former RCW 84.55.050, as EPIC believes it does, and if a ballot title's compliance with former RCW 84.55.050 were subject to adjudication years after the voters approved the levy lid lift, local governments' plans and finances could be thrown into disarray. That, of course, would undermine the will of the voters.

IV.   Our Precedent Requires Objectors To Raise Statutory Ballot Title Challenges within the Statutory Time Limit

Finally, EPIC contends that we have previously resolved ballot title objections after an election has taken place and that applying RCW 29A.36.090's 10-day time limit to its claim would break with that precedent. EPIC relies on our decisions in *Washington Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 278 P.3d 632 (2012) (*WASAVP*); *City of Burien v. Kiga*, 144 Wn.2d 819, 31 P.3d 659 (2001); *Amalgamated Transit Union*, 142 Wn.2d 183; and *City of Sequim v. Malkasian*, 157 Wn.2d 251, 138 P.3d 943 (2006), for this argument.

Those cases do not support EPIC's contention. To start, *WASAVP* involved a challenge to the constitutionality of a voter-enacted measure on the grounds that

19

it failed to comply with the "single-subject and subject-in-title rules found in article II, section 19 of the Washington State Constitution." 174 Wn.2d at 646. Because that constitutional provision applies equally to the legislature's work as to the people's work and because the legislature may amend the titles of bills as it considers them, *see, e.g.*, 1 SENATE JOURNAL, 60th Leg., Reg. Sess., at 427 (Wash. 2008) (recording Senate's approval of motion to amend bill title); ENGROSSED S.B. 6641, 60th Leg., Reg. Sess. (Wash. 2008), we have always permitted claims based on article II, section 19 to be raised postenactment. *Cf. Brown v. Owen*, 165 Wn.2d 706, 720-24, 206 P.3d 310 (2009) (detailing limits on the judiciary's ability to examine the internal workings of the legislature). *WASAVP* did not involve an objection to a voter-enacted law on the basis that its ballot title failed to comply with statutory requirements.[10]

Our decisions in *Kiga* and *Amalgamated Transit Union* are similar to our decision in *WASAVP* in that respect. They resolved postenactment, article II,

---

[10] *WASAVP* did not involve an objection to a voter-enacted law on the basis that its ballot title had failed to comply with former RCW 84.55.050's express-statement requirement. But the voter-enacted law at issue in that case was not a property tax increase, so former RCW 84.55.050 had no bearing on the ballot title. 174 Wn.2d at 646-47 (describing an initiative concerning liquor laws).

section 19 constitutional challenges. *Kiga*, 144 Wn.2d at 822-23; *Amalg. Transit Union*, 142 Wn.2d at 206-27. They did not involve objections based on statutory requirements.[11] *Kiga*, 144 Wn.2d at 822-23; *Amalg. Transit Union*, 142 Wn.2d at 206-27.

Our decision in *Malkasian* did not involve an objection to a ballot title based on statutory requirements either.[12] That decision addressed the scope of the local initiative power. 157 Wn.2d at 254. We noted that whether a court considered that question preenactment or postenactment, "the subject matter of the initiative is either proper for direct legislation or it is not." *Id.* at 260 (citing *Coppernoll v. Reed*, 155 Wn.2d 290, 299, 119 P.3d 318 (2005)). And if a local initiative exceeds the scope of the local initiative power, superior courts can grant relief either

---

[11] *Kiga* and *Amalgamated Transit Union* did not involve objections based on former RCW 84.55.050's express-statement requirement. But like *WASAVP*, they did not involve measures that would increase property taxes, so former RCW 84.55.050 had no bearing on the ballot titles. *Kiga*, 144 Wn.2d at 822-23 (describing an initiative concerning the *reduction* and *limitation* of property taxes); *Amalg. Transit Union*, 142 Wn.2d at 193 (describing an initiative concerning license tab fees).

[12] Like the other three decisions on which EPIC relies, *Malkasian* could not have involved an objection based on former RCW 84.55.050's express-statement requirement because the measure at issue in that case would not have increased property taxes. 157 Wn.2d at 255 (describing an initiative concerning voter ratification of city-issued bonds).

preenactment (by ordering it off the ballot) or postenactment (by striking down the measure). *Id.* at 260-61. But postenactment review of that type does not involve the ballot title's clarity or accuracy—issues that are subject to quick and conclusive resolution. RCW 29A.36.090.

In fact, another decision, *Washington Federation of State Employees v. State*, shows precisely how our review of these types of claims differs. 127 Wn.2d 544, 901 P.2d 1028 (1995). In that case, we addressed a postenactment challenge to the constitutionality of a voter-enacted law under article II, section 19 of the Washington Constitution. *Id.* at 555-57. At the same time, we declined to consider the postenactment objection to the law's ballot title based on its alleged noncompliance with the clarity and accuracy requirements of former RCW 29.79.040 (1992). *Id.* at 560.[13] Thus, *Washington Federation* confirms that

---

[13] Former RCW 29.79.040 (1992) is substantively similar to current statutory accuracy and clarity requirements: it required the ballot title at issue in *Washington Federation* to be true, impartial, and concise. 127 Wn.2d at 557-58. We held that the objectors' "failure to timely challenge the ballot title [before the election] under [former RCW 29.79.060 (1992)] preclude[d] their claim of noncompliance with [former] RCW 29.79.040." *Id.* at 560. Just as former RCW 29.79.040 is substantively similar to present statutory accuracy and clarity requirements, former RCW 29.79.060 is substantively similar to current RCW 29A.36.090. Former RCW 29.79.060 provided a five-day window within which to object to a ballot title drafted by the attorney general, and it directed the superior court to give "first priority" to resolving the objections. Like

22

challenges to a ballot title based on failure to comply with statutory accuracy and clarity requirements must be raised during the statutory time limit.

## CONCLUSION

We hold that EPIC's claim is untimely. The decision of the Court of Appeals is reversed, and the judgment of the superior court is affirmed.

---

current RCW 29A.36.090, former RCW 29.79.060 provided that the superior court's resolution of the objections would be "final."

_____ George M. Cld, J.

WE CONCUR:

_____ Fairhurst, CJ.

_____ Johnson, J.

_____ Owens, J.

_____ Stephens, J.

_____ Wiggins, J.

_____ González, J.

_____ Ju, J.