138 P.3d 943 (2006)
CITY OF SEQUIM, a noncharter code city and a municipal corporation of the State of Washington, by and through its city council, Respondent,
v.
Paul MALKASIAN, circulator, sponsor and presenter of an initiative and a referendum petition to the Sequim City Council, Petitioner.
No. 74987-6.
Supreme Court of Washington, En Banc.
Argued January 13, 2005.
Decided July 13, 2006.
*945 Peter J. Eglick, Eglick Kiker Whited PLLC, Seattle, for Petitioner/Appellant.
Craig Andrew Ritchie, Ritchie Law Firm, Port Angeles, for Appellee/Respondent.
Sandra Lynn Cohen, Seattle City Attorneys Office, Seattle, for Amicus Curiae Washington State Association of Municipal Attorneys.
MADSEN, J.
¶ 1 This case requires the court to review a procedural tangle. Prior to an election, the city of Sequim acting through its city council, sought a declaratory judgment that a proposed initiative, the Ratepayer's Responsibility Act, was beyond the scope of initiative power of the residents of Sequim, Washington. The trial court disagreed with the city, granted summary judgment in favor of the defendant, Paul Malkasian, and ordered the initiative placed on the ballot. Although the city appealed, the Court of Appeals declined to stay the trial court's ruling and the election went forward. As a result, eight years later, no appellate court has reviewed the merits of the trial court's ruling.
¶ 2 Contrary to the claim of an overwrought dissent, the issue here is not whether Malkasian is a "hapless private citizen" or the city of Sequim, with a population of under 5,000, is a bully with unlimited resources.[1] The dissent's characterization of this case only further clouds the issues presented in this review. It is time for clarity.
¶ 3 As will be discussed below, the initiative proposed by Malkasian impermissibly contravened authority given to Sequim's city council enabling that elected body to finance important public projects, favored by the residents of Sequim, through the sale of bonds to the public. Rather than address the trial court's ruling that Malkasian's initiative was within the initiative power, the Court of Appeals determined that since the matter now had "evolved" into a postelection challenge to the voter approved initiative, Malkasian was an improper defendant.
¶ 4 We disagree with the Court of Appeals' characterization of this case. The fact that the timing of this review is postelection does not alter the nature of the claim brought by Sequimthis case was filed as, and continues to be, a challenge to an initiative as exceeding the initiative power, contravening authority given to the city council to finance projects for the residents of Sequim.
¶ 5 As we recently affirmed in Coppernoll v. Reed, 155 Wash.2d 290, 299, 119 P.3d 318 (2005), preelection challenges regarding the scope of the initiative power address the fundamental question of whether the subject matter of the measure was "proper for direct legislation." Postelection events do not further *946 sharpen the issuesthe subject matter of the proposed measure is either proper for direct legislation or it is not. Id. We find that the initiative here is indeed beyond the scope of the initiative power of the residents of Sequim. Accordingly, we reverse that portion of the Court of Appeals' ruling dismissing the appeal, as well as the trial court's summary judgment in favor of Malkasian, and hold that the initiative is invalid as it exceeds the initiative power.

FACTS
¶ 6 The facts in this case are not in dispute. On October 22, 1996, the city, acting through its city council, brought suit pursuant to chapter 7.24 RCW, the Uniform Declaratory Judgments Act, regarding a proposed initiative entitled, "the Ratepayer's Responsibility Act." The proposed initiative would impose additional requirements on revenue bonds issued by the city. The proposed initiative would require the city council of Sequim to obtain ratification by the voters before issuing citywide revenue bonds authorized under RCW 35.41.030.[2] The proposed initiative provided limited exceptions for bonds and warrants that had been ratified by voters at a prior election or approved by each citizen accepting a future obligation. In addition, under the proposed initiative such revenue bonds would also be subject to all regulations and laws applicable to general obligation bonds regarding notification, publication, and election.
¶ 7 Prior to the proposed initiative being placed on the ballot, the city sought a declaratory judgment that the proposed initiative was beyond the scope of the initiative power of the residents of Sequim and was thus not proper for direct legislation. The city argued that the proposed initiative was beyond the scope of the initiative power because under chapter 35.41 RCW the legislature vested the legislative body of the city (i.e., its city council) with the power to authorize revenue bonds, and not the city itself. The city also sought an injunction prohibiting an election on the proposed initiative and any other further relief the court deemed just. Clerk's Paper (CP) at 296-301. The city served Paul Malkasian as defendant in the action. Malkasian was leading the effort regarding the proposed initiative. In a letter requesting that the proposed initiative be placed on the ballot, Malkasian identified himself as the chairperson of an unincorporated group, "Partners in Government." CP at 303. On behalf of this group, Malkasian spearheaded and coordinated the gathering of signatures for the initiative and the circulation of the initiative. He attended meetings of the city council where the initiative was discussed and delivered the initiative and signatures to the city clerk.[3]
*947 ¶ 8 Both the city council and Malkasian moved for summary judgment on the narrow issue as to whether the initiative was beyond the scope of the relevant initiative power. After a hearing, the trial court granted Malkasian's cross-motion for summary judgment, holding that the initiative was within the initiative power of the residents of the city. The trial court also ordered the city to place the initiative on the ballot. The city sought immediate appellate review and requested a stay, which the Court of Appeals denied.
¶ 9 Both parties briefed the issue in the Court of Appeals prior to election. However, after the election, Malkasian filed a motion to dismiss with the Court of Appeals, claiming that the case was moot. The Court of Appeals denied Malkasian's motion to dismiss but did not address the merits. Instead, the Court of Appeals determined that this was a "postelection" challenge and remanded to the trial court because it claimed that "the record on appeal is insufficient for adequate and appropriate review of the city's challenge" to the new ordinance. Resp't's Suppl. CP at 65.
¶ 10 On remand, the trial court dismissed the case on procedural grounds, finding that Malkasian was not the proper defendant to defend all aspects of the ordinance. The trial court also awarded costs to Malkasian but did not grant Malkasian's request for attorney fees finding no statutory authority to do so.
¶ 11 Following the remand, the Court of Appeals again declined to decide the validity of the initiative. Instead, the Court of Appeals held that as a postelection case, the city had standing to bring the action under chapter 7.24 RCW but that Malkasian was an improper defendant to defend all issues surrounding the validity of the ordinance. The Court of Appeals also declined to award Malkasian attorney fees. See City of Sequim v. Malkasian, 119 Wash.App. 654, 79 P.3d 24 (2003).
¶ 12 Malkasian petitioned this court for review on the issue of the city's standing postelection and as to his attorney fees. The city cross-petitioned, asking this court to review the validity of the initiative.[4] We granted review on all issues raised by the parties. Washington State Association of Municipal Attorneys filed an amicus curiae brief in support of the city.

DISCUSSION

1. Mootness of Preelection Challenge
¶ 13 The city contends that the narrow issue of whether the initiative was beyond the scope of the initiative power granted to the residents of Sequim, an action it brought before the election was held, is not moot and therefore is properly in front of this court. Malkasian argues that because an intervening election occurred in which the voters approved the initiative, this case is transformed into a postelection challenge and the subject matter challenge is moot. He is incorrect.
¶ 14 An issue is moot if the matter is "purely academic." State v. Turner, 98 Wash.2d 731, 733, 658 P.2d 658 (1983) (quoting Grays Harbor Paper Co. v. Grays Harbor County, 74 Wash.2d 70, 73, 442 P.2d 967 (1968)). However, an issue is not moot if a *948 court can provide any effective relief. Turner, 98 Wash.2d at 733, 658 P.2d 658 (citing Pentagram Corp. v. City of Seattle, 28 Wash. App. 219, 223, 622 P.2d 892 (1981)). See also 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3, at 261 (2d ed. 1984) ("The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."); Church of Scientology of Cal. v. United States, 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (the availability remedy need not be fully satisfactory to avoid mootness).
¶ 15 Malkasian argues that the issues relevant in a preelection review automatically became moot when the election was held, relying on State ex rel. Jones v. Byers, 24 Wash.2d 730, 167 P.2d 464 (1946). That case has no application, however, given the facts of this case.
¶ 16 In Jones, a petitioner sought a restraining order to stop a vote on a measure that would dissolve a school district and in its place form a new school district through consolidation. The petitioner maintained that the various county committees required to develop a comprehensive plan prior to the election failed to properly do so. Prior to the election, a hearing was held on the merits and the petitioner did not prevail. An election was then held in which the voters approved the dissolution of the school district and the formation of a new school district. On appeal, the court held that the matter was moot because "[t]he litigation was instituted solely for the purpose of preventing an election" which had already taken place. Id. at 733, 167 P.2d 464. In such case, "[n]o effectual judgment can be rendered." Id. (quoting Mackay v. Dever, 49 Wash. 439, 440, 95 P. 860 (1908)).
¶ 17 Unlike in Jones, Sequim did not bring an action solely to prevent an election. Rather, the city also sought a declaratory judgment that the initiative was beyond the scope of the initiative power of the residents of Sequim. Where the subject matter of an initiative is beyond the scope of the initiative power, it is "not proper for direct legislation." Coppernoll, 155 Wash.2d at 299, 119 P.3d 318; Seattle Bldg. & Constr. Trades Council v. City of Seattle, 94 Wash.2d 740, 745-46, 620 P.2d 82 (1980). It is well-settled that it is proper to bring such narrow challenges prior to an election. Coppernoll, 155 Wash.2d at 299, 119 P.3d 318 (subject matter challenges prior to an election are proper because they "do not raise concerns regarding justiciability because postelection events will not further sharpen the issue, i.e., the subject of the proposed measure is either proper for direct legislation or it is not"); Philadelphia II v. Gregoire, 128 Wash.2d 707, 717, 911 P.2d 389 (1996) (courts will review a proposed initiative prior to an election to determine if it is beyond the scope of the initiative power) (citing Seattle Bldg. & Constr., 94 Wash.2d at 746, 620 P.2d 82; Leonard v. City of Bothell, 87 Wash.2d 847, 557 P.2d 1306 (1976); Ruano v. Spellman, 81 Wash.2d 820, 505 P.2d 447 (1973); Ford v. Logan, 79 Wash.2d 147, 483 P.2d 1247 (1971)). See also Priorities First v. City of Spokane, 93 Wash.App. 406, 411, 968 P.2d 431 (1998).
¶ 18 Malkasian has cited no authority, and we have found none, to support his position that voter approval of an initiative changes, modifies, or enlarges the subject matter that is proper for direct legislation through initiative or referendum. Indeed, the law is plainly to the contrary. As we recently concluded in Coppernoll, 155 Wash.2d at 299, 119 P.3d 318, the subject matter of the initiative is either proper for direct legislation or it is not.
¶ 19 In this case, this court can still provide effective relief. The city requested three types of relief: (1) an injunction preventing the initiative from being placed on the ballot, (2) a declaratory judgment that the initiative was beyond the scope of the initiative power of the residents of Sequim and was thus invalid, and (3) any other relief the court deems just. CP at 300-301. While the election has already taken place and this court can no longer impose an injunction preventing the election, other effective remedies exist. For example, if this court finds that the subject matter of the initiative was *949 outside the scope of the relevant initiative power, this court can invalidate the initiative. Accordingly, because we can grant an effective remedy, we hold that the preelection challenge, whether the subject matter of the initiative is beyond the scope of the initiative power of the residents of Sequim, is not moot.

2. Whether the Initiative is Beyond the Scope of the Initiative Power
¶ 20 At the heart of this case is the trial court's grant of summary judgment to Malkasian based on its conclusion that the initiative was within the scope of the initiative power. A motion for summary judgment is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). The standard of review on appeal from an order on summary judgment is de novo. Sane Transit v. Sound Transit, 151 Wash.2d 60, 68, 85 P.3d 346 (2004). The appellate court engages in the same inquiry as the trial court. Citizens for Responsible Wildlife Mgmt. v. State, 149 Wash.2d 622, 630-31, 71 P.3d 644 (2003); Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 169, 736 P.2d 249 (1987).
¶ 21 The city contends that the initiative is beyond the scope of the initiative power because it usurps authority granted to the legislative body of the city under chapter 35.41 RCW. In contrast, Malkasian claims that the legislature granted authority to the city as a corporate entity. Malkasian is incorrect.
¶ 22 An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself. See, e.g., Leonard, 87 Wash.2d at 853, 557 P.2d 1306 (a grant of power by the legislature to the legislative body of respondent, the city council of the city of Bothell, precludes a referendum election); State ex rel. Guthrie v. City of Richland, 80 Wash.2d 382, 384, 494 P.2d 990 (1972) (where the general law grants authority to the governing body of a city, the exercise of that authority may not be subject to repeal, amendment or modification by the people through the initiative or referendum process) (citation omitted); State ex rel. Bowen v. Kruegel, 67 Wash.2d 673, 678-79, 409 P.2d 458 (1965) (discussing, inter alia, State ex rel. Haas v. Pomeroy, 50 Wash.2d 23, 308 P.2d 684 (1957); Neils v. City of Seattle, 185 Wash. 269, 53 P.2d 848 (1936)).
¶ 23 In this case, the legislature unambiguously granted the legislative body of the city the authority over revenue bonds under multiple provisions in chapter 35.41 RCW. RCW 35.41.010 provides in part that the "the legislative body of any city or town may authorize, by ordinance, the creation of a special fund or funds" (emphasis added) for purposes of providing funds for defraying all or a portion of the costs of, among other activities, planning, purchase, leasing, or other acquisition of any municipally owned public land, building, facility or utility.
¶ 24 By ordinance, the "legislative body" may obligate the city to set aside and pay into a special fund or funds all or a portion of revenues or fees derived from municipally owned utilities or facilities. RCW 35.41.010. Furthermore, "the legislative body may also authorize" the creation of a special fund or funds to defray all or a part of the costs of any certain park property involving municipally owned off-street parking space or facilities. Id. Under RCW 35.41.030, "[i]f the legislative body of a city or town deems it advisable" to, among other actions, purchase, lease, construct, develop, or improve land, building, facility, or utility and the legislative body adopts an ordinance authorizing such action and to provide funds for defraying all or a portion of the costs thereof from the sale of revenue bonds, such city or town may issue revenue bonds against the special fund or funds created solely from revenues. The legislative body is required to seek ratification by the voters (voter approval) prior to the issuance of such revenue bonds when only the original acquisition, construction or development is required to be ratified by the voters under the provisions of RCW 35.67.030 and RCW 35.92.070. RCW 35.41.030.[5]
*950 ¶ 25 Such revenue bonds may be sold in any manner and for any price "the legislative body" of any city or town deems to be for the best interest of the city or town. RCW 35.41.060. Additionally, the "legislative body" may provide in any contract for the construction or acquisition of the proposed facility or utility or maintenance or operation thereof that payment will be made only in revenue bonds or warrants. RCW 35.41.060. The "legislative body" may provide by ordinance for fixing of revenue rates and charges for the furnishing of service, use, or benefits. RCW 35.41.080.
¶ 26 The "legislative body" is also given authority to waive certain connection charges for low-income persons and to fix charges at rates that will be sufficient to provide for payment of bonds and warrants. RCW 35.41.080(1) and (2). The "legislative body" may, in setting the rates to be charged, include all costs and estimated costs in issuing said bonds, including certain construction and engineering costs. RCW 35.41.090. The "legislative body" may also pledge certain utility local improvement district assessments to provide additional security for revenue bonds used for water and sewage systems. RCW 35.41.095. Finally, RCW 35.41.100 provides in part that "no restriction, limitation, or regulation relative to the issuance of such bonds contained in any other law shall apply to the bonds issued hereunder."
¶ 27 Given the multiple provisions explicitly providing authority in chapter 35.41 RCW to the "legislative body" of a city or town, we conclude that the legislature granted authority over these types of revenue bonds to the legislative body of the city. This conclusion is consistent with a thoughtful opinion by the Court of Appeals in Priorities First, 93 Wash.App. 406, 968 P.2d 431, examining chapter 35.41 RCW while this case was pending on appeal.
¶ 28 In Priorities First, an initiative was proposed by certain voters in the city of Spokane requiring in part that an ordinance adopted by the city council authorizing the creation of a fund and pledging of certain revenue under chapter 35.41 RCW be subject to voter ratification prior to implementation. Voter ratification is not required by statute. In that case, the Spokane city council approved a plan to develop an area in downtown Spokane, which included building a parking garage, pledging certain revenues from parking meters, and the issuance of bonds to pay for construction. In finding that the initiative was beyond the scope of the initiative power, the Court of Appeals said that "[w]e agree with the superior court that Initiative 97-1 interferes with authority the Legislature has granted to the City Council in RCW 35.41 to create a special fund to defray costs of a municipally owned facility." Priorities First, 93 Wash.App. at 411, 968 P.2d 431.
¶ 29 In reaching its conclusion, the Court of Appeals pointed to both RCW 35.41.010 and RCW 35.41.030. Id. Under RCW 35.41.030, the "legislative body" of the city of Spokane (the city council) was authorized to create a special fund by ordinance obligating the city of Spokane to set aside and pay a portion of revenues from certain parking meters into the fund. And, pursuant to RCW 35.41.030, if the "legislative body" of the city of Spokane deems it advisable to, among other actions, acquire, construct, or develop any facility and adopts an ordinance authorizing such action and to provide funds for defraying the cost, the city may issue revenue bonds against the special fund created solely from revenues. The Court of Appeals explained that "requiring voter approval before the City Council pledges or uses city funds sources for off-street parking facilities, the proposed initiative interferes with the power the Legislature granted the city council in these statutes." Priorities First, 93 Wash.App. at 412, 968 P.2d 431.
¶ 30 The court explained that an initiative cannot interfere with the exercise of power delegated by state law to the governing body of a city. Id. at 411, 968 P.2d 431 (citing Guthrie, 80 Wash.2d at 384, 494 P.2d 990) (holding that a referendum requiring voter approval of bonds was outside the scope of the referendum power, grant of power was to the governing body). Stated another way, the court said that "the people cannot deprive the city legislative authority of the power to do what the constitution and/or a *951 state statute specifically permit it to do." Id. (citing King County v. Taxpayers of King County, 133 Wash.2d 584, 608, 949 P.2d 1260 (1997) (holding that initiative requiring voter approval on bonds was outside the scope of the initiative power)).
¶ 31 It is well-settled that in the context of statutory interpretation, a grant of power to a city's governing body ("legislative authority" or "legislative body") means exclusively the mayor and city council and not the electorate. See, e.g., Bowen, 67 Wash.2d at 677-78, 409 P.2d 458; Whatcom County v. Brisbane, 125 Wash.2d 345, 350, 884 P.2d 1326 (1994); Citizens for Financially Responsible Gov't v. City of Spokane, 99 Wash.2d 339, 344-45, 662 P.2d 845 (1983); Snohomish County v. Anderson, 123 Wash.2d 151, 156, 868 P.2d 116 (1994); Neils, 185 Wash. at 276-81, 53 P.2d 848; Benton v. Seattle Elec. Co., 50 Wash. 156, 159, 96 P. 1033 (1908). When the legislature grants authority to the governing body of a city, that authority is not subject to repeal, amendment, or modification by the people through the initiative or referendum process. Brisbane, 125 Wash.2d at 351, 884 P.2d 1326; Anderson, 123 Wash.2d at 156, 868 P.2d 116; Guthrie, 80 Wash.2d at 384, 494 P.2d 990; Pomeroy, 50 Wash.2d at 24-25, 308 P.2d 684; Neils, 185 Wash. at 283, 53 P.2d 848; Bidwell v. City of Bellevue, 65 Wash.App. 43, 49, 827 P.2d 339 (1992).
¶ 32 In chapter 35.41 RCW, the legislature unambiguously granted the legislative body of the city, the city council (and mayor), power over revenue bonds.[6] The initiative conflicts with that power by requiring that revenue bonds authorized under chapter 35.41 RCW be subject to voter ratification when not required by statute and by requiring that such revenue bonds also be subject to regulations and laws applicable to general obligation bonds regarding notification, publication, and election. These provisions clearly limit and restrict the authority granted by the legislature to the legislative body of the city under chapter 35.41 RCW. Thus, the subject matter of the initiative is not proper for direct legislation.
¶ 33 Malkasian contends, though, that because RCW 35.41.030 provides in part that "such city or town may issue revenue bonds," the grant of power is to the city as a corporate entity, not to the legislative body. As further support, Malkasian points to RCW 35A.40.080, which he quotes as providing the city, a code city: "[i]n addition to any other authority granted by law, a code city shall have authority . . .; to issue revenue bonds, coupons and warrants as authorized by chapter 35.41 RCW." Thus, he claims that because the city has the authority to act under chapter 35.41 RCW, the Municipal Revenue Bond Act, the legislature delegated the authority to the city as a corporate entity, bringing matters legislated under that act within the initiative power.
¶ 34 Malkasian's claims are without merit. As discussed above, "the legislative body" is authorized to take multiple complex acts requiring significant understanding of financial markets regarding revenue bonds including creating special funds and pledging of revenues and fees (RCW 35.41.010, .095), authorizing by ordinance the purchase or construction of facilities and providing funds through revenue bonds (RCW 35.41.030), the sale and pricing of revenue bonds and warrants (RCW 35.41.060), and setting the rates and charges for services to pay for revenue bonds or warrants (RCW 35.41.080, .090). The reference in RCW 35.41.030 to a "city or town" being able to "issue" such revenue bonds does not change or alter the authority granted to the legislative body. Rather, it refers to the legal relationship of the revenue bonds. The city or town is "the issuer" of the revenue bonds because it is the legal entity responsible for payment, not the city council (the legislative body). See, e.g., RCW 35.41.070 (providing in part that the holder of any bond may bring suit against "the city or town" to compel the city or town to set aside and pay into the special fund if such city or town fails to do so).
*952 ¶ 35 Moreover, Malkasian fails to fully set forth the provisions in RCW 35A.40.080. Malkasian provided only a few words from that statute mentioning the city's ability to "issue revenue bonds" authorized by chapter 35.41 RCW. RCW 35A.40.080 entitled "BondsForm, terms, and maturity" provides in full:
In addition to any other authority granted by law, a code city shall have authority to ratify and fund indebtedness as provided by chapter 35.40 RCW; to issue revenue bonds, coupons and warrants as authorized by chapter 35.41 RCW; to authorize and issue local improvement bonds and warrants, installment notes and interest certificates as authorized by chapter 35.45 RCW; to fund indebtedness and to issue other bonds as authorized by chapters 39.44, 39.48, 39.52 RCW, RCW 39.56.020, and 39.56.030 in accordance with the procedures and subject to the limitations therein provided.
RCW 35A.40.080 (emphasis added).
¶ 36 When viewed in its entirety, RCW 35A.40.080 provides the city with the authority to "issue" only revenue bonds under chapter 35.41 RCW. It does not provide the authority "to ratify" or "to authorize" such revenue bonds as it does with reference to chapter 35.40 RCW or chapter 35.45 RCW, which is consistent with the other provisions cited above in chapter 35.41 RCW. Malkasian also ignores the last part of RCW 35A.40.080, providing that the authority granted to a city or town must be exercised "in accordance with the procedures and subject to the limitations therein." As discussed above, RCW 35.41.100 expressly provides that "no restriction, limitation, or regulation relative to the issuance of such bonds contained in any other law shall apply to the bonds issued hereunder." Accordingly, consistent with First Priorities, we hold that the initiative in this case is outside the scope of the initiative power of the residents of Sequim. We hold that the initiative exceeded the initiative power of the residents of Sequim and that the trial court erred in granting summary judgment in favor of Malkasian.[7]

ATTORNEY FEES
¶ 37 Malkasian contends that he should be awarded attorney fees because he was not the proper person to defend all aspects of the ordinance postelection. He relies on the "common fund/common benefit theory" as the basis for an award.
¶ 38 As discussed above, this case was properly brought as a preelection challenge. Contrary to his contention, Malkasian, as chairman of the unincorporated group that initiated the initiative, was named as defendant on the issue only of whether the initiative is proper for direct legislation. The dissent strenuously suggests that the city of Sequim erred in naming Malkasian as a party in the action to defend the proposed initiative prior to the election, claiming that Malkasian was used as a "scapegoat" and "punching bag." However, the dissent, as it must, concedes that it has no authority for its claim and must look to case law and statutory authority only by analogy. The dissent's reliance on inapposite case law and inapplicable statutory provisions is misguided. For example, the dissent points to Washington State Labor Council v. Reed, 149 Wash.2d 48, 65 P.3d 1203 (2003) for the proposition that a local government official should have been named as a defendant by the city of Sequim. The dissent fails to explain, however, that Washington State Labor Council involved an action to prevent the Secretary of State from certifying the results of an election on a referendum measure. The dissent also fails to point out that in that case, the Secretary of State did not take a position, as it was the historical practice not to, as the city of Sequim did here, that the measure was outside of the initiative power.
¶ 39 In this case, like many other cases, the local officials had a valid concern that the proposed initiative was outside the scope of *953 the initiative power. Numerous cases illustrate that the sponsor of the proposed measure, the person or persons who engaged in the efforts and actions to draft an initiative or referendum, gather signatures, circulate the measure, and place the measure on the ballot, defends the measure it proposes prior to election. See, e.g., Brisbane, 125 Wash.2d 345, 884 P.2d 1326 (Whatcom County Council sought declaratory judgment that proposed referendum was outside the referendum power; the citizen that conducted that referendum campaign defended the proposed measure); Snohomish County v. Anderson, 124 Wash.2d 834, 881 P.2d 240 (1994) (Snohomish County residents attempted to subject a Snohomish County ordinance to referendum; the Snohomish County Council brought suit for declaratory judgment that the referendum was outside the referendum power; citizens who sponsored the referendum defended the proposed referendum); Maleng v. King County Corr. Guild, 150 Wash.2d 325, 76 P.3d 727 (2003) (King county official sought declaratory judgment that proposed initiative was outside of the initiative power; sponsor of the initiative, a guild, defended the proposed initiative); Seattle Bldg. & Constr., 94 Wash.2d 740, 620 P.2d 82 (a trade group obtained a declaratory judgment against the city of Seattle and proponents of the initiative that proposed initiative was outside of the initiative power).
¶ 40 Similarly, in cases in which the local official declined to place a measure on the ballot based on a good faith belief that the measure was outside of the initiative/referendum power, the sponsor or sponsors of the measure defended the proposed measure. See, e.g., Priorities First, 93 Wash.App. 406, 968 P.2d 431 (sponsor, a political action committee, brought suit against a city and its city council after the city council determined an initiative regarding bonds was outside the scope of the initiative power, sponsor defended the proposed initiative); Citizens for Financially Responsible Gov't v. City of Spokane, 99 Wash.2d 339, 662 P.2d 845 (1983) (sponsors of a proposed referendum brought suit to place the proposed measure on the ballot; sponsors defended the proposed referendum). In all of the cases mentioned above regarding local initiative/referendum measures, the sponsors who campaigned for the measures defended the proposed measures. This alignment of parties is consistent with justiciability and standing requirements that parties in a legal action be adversarial and have sufficient opposing interests in the matter. See, e.g., 13 WRIGHT, MILLER & COOPER, § 3530, at 308 (in each case there must be a conflict of interest between at least two genuinely adversary parties; the self-interests of the adversaries are relied upon to provide the foundation for sound adjudication). Sponsors of proposed initiatives are clearly interested in the matter.
¶ 41 The dissent also misplaces reliance on RCW 7.25.020, claiming that "by analogy" the provision supports its view that Malkasian was erroneously named as a party to the litigation because that statutory provision requires the appointment of counsel in other declaratory actions. As set forth in the statute, chapter 7.25 RCW applies in cases involving an actual issuance of bonds by a municipal entity. RCW 7.25.010 (statute applies when legislative body of city or other municipal entity has "passed an ordinance or resolution authorizing" the issuance of bonds and the validity of such proposed bond issue may be tested in chapter 7.25 RCW); RCW 7.25.020 (the complaint shall set forth the ordinance or resolution authorizing the issuance and sale of bonds and the title to the action shall be "`[i]n re (name of bond issue).'"). This case does not involve a local ordinance or resolution authorizing the issuance of bonds as required by RCW 7.25.010 and thus has no applicability. Thus, though full of fire and brimstone and heated barbs, the dissent's views are not supported by either law or logic.
¶ 42 Even if the dissent were correct that Malkasian is the wrong defendant, no contract or statute authorizes attorney fees for Malkasian. "Attorney fees may be awarded only if authorized by `contract, statute or recognized ground in equity'." Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70, 847 P.2d 440 (1993) (quoting Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist., 96 Wash.2d 806, 815, 638 P.2d 1220 (1982); Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 540, 585 P.2d 71 (1978)). *954 Furthermore, the "common fund/common benefit" theory, a narrow equitable ground for awarding attorney fees, does not apply. Under this equitable theory, a court is authorized to award attorney fees only when a litigant preserves or creates a common fund for the benefit of others as well as themselves. Bowles, 121 Wash.2d at 70-71, 847 P.2d 440 (the common fund and common fund/substantial benefit doctrine authorizes attorney fees only when the litigants also preserve or create a common fund for the benefit of others as well as themselves in addition to providing a substantial benefit upon others); Leischner v. Alldridge, 114 Wash.2d 753, 756-58, 790 P.2d 1234 (1990); Seattle Sch. Dist., 90 Wash.2d at 542-45, 585 P.2d 71; Painting & Decorating Contractors, 96 Wash.2d at 815, 638 P.2d 1220. Malkasian did not create or preserve a common fund.
¶ 43 The dissent erroneously suggests that common fund/substantial benefit doctrine no longer requires creation or preservation of a common fund. The dissent's view is directly contrary to Washington law. See, e.g., Painting & Decorating Contractors, 96 Wash.2d at 815, 638 P.2d 1220 (denying request for attorney fees when benefit was conferred upon others but no common fund or asset was preserved or created); Bowles, 121 Wash.2d at 70-71, 847 P.2d 440. Nor does this case involve minority shareholder rights. Seattle Trust & Sav. Bank v. McCarthy, 94 Wash.2d 605, 617 P.2d 1023 (1980) (awarding attorney fees to minority shareholder). As courts have repeatedly clarified, the common fund/substantial benefit doctrine is applicable only when the litigant preserves assets or creates a common fund, in addition to conferring a substantial benefit upon others. See, e.g., Interlake Porsche + Audi, Inc. v. Bucholz, 45 Wash.App. 502, 728 P.2d 597 (1986) (finding an award of attorney fees to appropriate to minority shareholder when shareholder both created a common fund and conferred a substantial benefit upon corporate shareholders); Bowles, 121 Wash.2d at 70-71, 847 P.2d 440 (common fund/substantial benefit doctrine requires litigant to both create a common fund or preserve assets and to confer a substantial benefit upon others); Painting & Decorating Contractors, 96 Wash.2d at 815, 638 P.2d 1220 ("[t]he equitable doctrine of `common benefit/common fund' upon which PDCA [Painting & Decorating Contractors of Am.] relies does not in fact exist here, for there is nothing in the record to establish that PDCA's action protected, preserved or created a [common] fund from which attorneys' fees could be awarded").
¶ 44 Although attorney fees are not appropriate, Malkasian may be entitled to costs. RCW 7.24.100 provides that "[i]n any proceeding under this chapter, the court may make such award of costs as may seem equitable." Costs do not include attorney fees. Seattle Sch. Dist., 90 Wash.2d at 540-41, 585 P.2d 71. We find that a remand is warranted to determine if an award of costs to Malkasian is appropriate under the circumstances.

CONCLUSION
¶ 45 The city council of Sequim initiated this declaratory judgment action challenging an initiative, the Ratepayer's Responsibility Act, as exceeding the initiative power. Contrary to the dissent's protestations that the city treated Malkasian as a "punching bag," Malkasian spearheaded the campaign to place a proposed initiative on the ballot that was plainly outside of the initiative power. As a result, far from being the villains portrayed by the dissent, the city council brought this action in line with its duty to both uphold and enforce the law and to represent the people of their community.
¶ 46 Municipal bonds are used to finance an array of projects including elementary schools, streets and roads, bridges and highways, water tunnels and sewage treatment plants; state and local governments borrow for public purposes that better the lives of the people who live in the community or of those who use the services of municipal enterprises. See, e.g., Judy Wesalo Temel, The Fundamentals of Municipal Bonds, 1, 51 (5th ed.2001); Michael V. Brandes, Naked Guide to Bonds: What You Need to Know-Stripped Down to the Bare Essentials, 8 (2004). The issuance and sale of municipal bonds (bonds issued by governmental entities) is exceedingly complex, involving among *955 many actions, assessments of population and business growth and national financial markets and consultation with financial advisers and underwriters. See, e.g., Temel, supra, at 49-81. Using its discretion to do so, the legislature decided to place the power over this important and complex task to authorize revenue bonds in the city's legislative body.
¶ 47 We hold that the initiative was indeed outside of the initiative power, contravening the authority over bonds given to the city council as the legislative body of the city of Sequim under chapter 35.41 RCW. Additionally, we hold that the question of whether an initiative is beyond the scope of the initiative power is not mooted by an election since an election does not alter or expand the scope of the initiative power. This case is remanded for further proceedings consistent with this opinion.
Concurring: C. JOHNSON, BRIDGE, OWENS, FAIRHURST, JJ.
CHAMBERS, J. (concurring in part/dissenting in part).
¶ 48 I concur with the analysis of the majority that this initiative was beyond the scope of the initiative power of the residents of Sequim. However, I agree with the trial court, the Court of Appeals, and the dissent that this action is not justiciable and should be dismissed. I write separately because I am not satisfied with the resolution of the justiciability issue articulated either by the majority or by the dissent.
¶ 49 Generally, I am of the view that courts should not interfere with elections. But I accept that there is a well established exception to this principle. Courts have an obligation to prevent elections on improper subjects. It was the obligation of the court below to prevent this initiative, the Ratepayer's Responsibility Act, from going to the voters because it was an attempt to amend state law. See generally State ex rel. Haas v. Pomeroy, 50 Wash.2d 23, 27-28, 308 P.2d 684 (1957) (distinguished by Earle M. Jorgensen Co. v. Seattle, 99 Wash.2d 861, 866, 665 P.2d 1328 (1983)); Benton v. Seattle Electric Co., 50 Wash. 156, 96 P. 1033 (1908). By far, the best practice is to expedite review of a challenge to a voter's initiative so that it can be finally decided before the election.
¶ 50 It is important to the principles of justiciability, as the majority points out, to have real parties with real adversarial and opposing interests to genuinely represent the interests of both sides. Without doubt, the sponsors who have campaigned for local initiative and referendum measures have an abiding interest in defending these measures. Those sponsors likely have standing. However, as the Court of Appeals and the dissent appropriately point out, permitting a city to choose its own representative to defend an initiative petition even if it is a sponsor, may allow "[t]he plaintiff [to] set up a `straw man' defendant whom it can easily knock over." City of Sequim v. Malkasian, 119 Wash.App. 654, 661, 79 P.3d 24 (2003). In my view, when an individual, singled out by a government to defend an initiative establishes that he or she is not the appropriate party to defend it and moves to dismiss the action on those grounds, that should be the end of the case. Whether the action is preelection or postelection does not change the justiciability equation in my view.
¶ 51 The dissent's suggestion that the city clerk is the appropriate party to vigorously defend an initiative opposed by the city does not present a satisfactory alternative to satisfy the justiciability requirement. Here, the preelection/postelection distinction may affect the equation. Before the initiative is passed, it does not have the authority of an ordinance. Thus, the city clerk does not have a duty to enforce or defend it. Until the legislature creates an appropriate mechanism, the courts, in furtherance of equity and the proper functioning of the democratic process, have a duty to ensure that those willing and able to vigorously defend the initiative are the parties defending it before the court.
¶ 52 Should Paul Malkasian be awarded attorney fees? I would, if I could, but I can't. Here again, I agree in part with both the majority and the dissent. The majority is correct that generally the common fund/common benefit rule, an equitable theory, allows for an award of attorney fees when a litigant preserves or creates a common fund for the benefit of others as well as *956 themselves. The majority is also correct that Malkasian has not created such a common fund. Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70-71, 847 P.2d 440 (1993). The dissent is correct in pointing out that this court has awarded reasonable attorney fees under similar circumstances based upon this common benefit theory. Seattle Trust & Savings Bank v. McCarthy, 94 Wash.2d 605, 612-13, 617 P.2d 1023 (1980) (awarding attorney fees for protecting the rights of other minority shareholders). However, I would not extend application of the common fund/common benefit rule into the arena of public debate, initiatives, referendums, and elections. The legislative branch has extensively and appropriately legislated in this field. Perhaps in the future, the legislature will provide recourse for individuals dragooned against their will to defend initiative petitions. With those reservations, I concur with the dissent that this case should have been dismissed as nonjusticiable.
SANDERS, J. (dissenting).
¶ 53 Although the trial court and the Court of Appeals dismissed this declaratory judgment action for lack of justiciability, i.e., failure to name a defendant with a direct and substantial legal interest, the majority barely mentions the term let alone applies the doctrine. This omission by the majority of the threshold dispositive issue is bizarre. I concur fully with the Court of Appeals' conclusion this case is nonjusticiable for failure to name a defendant with a direct and substantial interest,[1] such as the county auditor or city clerk. Moreover I would award Mr. Malkasian his reasonable attorney fees under the common benefit rule.
¶ 54 This appeal raises two independent issues:
¶ 55 1. Is a preelection challenge to a ballot initiative justiciable when it fails to name as a party defendant a public official or entity responsible for placing the matter on the ballot?
¶ 56 2. Is a private citizen sued by the government to vindicate public policy entitled to an award of reasonable attorney fees under the equitable common benefit doctrine?

I.

Justiciability
¶ 57 Let us begin with a simple truth. Mr. Malkasian did not bring on this litigation but has been targeted, and pummeled, by the city of Sequim for nearly a decade with all the taxpayer resources the city could bring to bear against this hapless private citizen. Initially, Mr. Malkasian was forced to defend placing the initiative on the ballot and then was required to defend the initiative from the city's constitutional attack. But at no time did he hold any official capacity in the process or any legally cognizable interest unique from any other private citizen.
¶ 58 In a declaratory judgment action seeking to strike a proposed initiative from the ballot, "[j]usticiability is a threshold inquiry and must be answered in the affirmative before a court may address the merits of a litigant's claim." Coppernoll v. Reed, 155 Wash.2d 290, 300, 119 P.3d 318 (2005). Under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, a plaintiff must establish:
"`(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.'"
Coppernoll, 155 Wash.2d at 300, 119 P.3d 318 (quoting To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 411, 27 P.3d 1149 (2001) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973))).
¶ 59 This action named Paul Malkasian as sole defendant, identifying him as the initiative sponsor; however, Malkasian specifically denied the city's allegation he was "the circulator, sponsor and presenter" of the initiative petition. Clerk's Papers (CP) at 296. The *957 city's complaint only alleges Malkasian delivered the petition. Partners in Government sponsored the initiative, not Malkasian.
¶ 60 Malkasian filed a motion to dismiss, arguing the controversy was not justiciable because the City cannot force a single citizen to bear the burden of defending a proposed or adopted city ordinance, the City lacks standing to challenge its own ordinances, and that all necessary parties had not been joined. Malkasian argued that the City could have appointed a representative of the class of its citizens or could have had counsel appointed for its ratepayers at such time as a bond issue might be jeopardized by the adopted ordinance but did not. Report of Proceedings (RP) (July 26, 2002) at 5-6.
¶ 61 The trial court dismissed the action as nonjusticiable. RP (July 26, 2002) at 37; Appellant's Suppl. CP at 4-5 (Order of Dismissal dated July 26, 2002). Because the agreed order bifurcated the case, the merits (i.e., evaluating the validity of the initiative under the postelection standard of review) were neither briefed by the parties nor addressed by the trial court.
¶ 62 The City appealed this decision back to Division Two and briefed the merits of its case against the validity of the now passed initiative. The City dedicated only limited space in its briefing to the superior court's decision and addressed only the ability to obtain review of the validity of an initiative under the Uniform Declaratory Judgments Act. Suppl. Br. on Remand of Appellant City of Sequim at 13.
¶ 63 The Court of Appeals ruled the City had standing to bring an action under the Uniform Declaratory Judgments Act to seek postelection review of the validity of the initiative but held the case was not justiciable because Malkasian lacked the legal interest to defend, at his own expense, an enacted city ordinance. The Court of Appeals also denied Malkasian's request for attorney fees.
¶ 64 The Court of Appeals dismissed this action as nonjusticiable, holding the City cannot require a private citizen like Malkasian to defend the validity of a local ordinance stating, "The plaintiff may not set up a `straw man' defendant whom it can easily knock over," City of Sequim v. Malkasian, 119 Wash.App. 654, 661, 79 P.3d 24 (2003), observing an action is justiciable only if both the plaintiff and defendant have a "direct and substantial" legal interest in the dispute. Acme Fin. Co. v. Huse, 192 Wash. 96, 104, 73 P.2d 341 (1937). Further, as the Court of Appeals recognized, "Because no citizen has a more direct or substantial right than any other, no citizen acting in his individual capacity has a right that is direct or substantial enough to ensure that he or she will vigorously and effectively defend." Malkasian, 119 Wash.App. at 662, 79 P.3d 24. Because Malkasian has no more legal interest in the validity of this initiative than any other citizen, the Court of Appeals held the city cannot require him to defend the measure.
¶ 65 At this point the majority quarrels with the Court of Appeals' characterization of this case as a postelection rather than preelection challenge. ("Rather than address the trial court's ruling that Malkasian's initiative was within the initiative power, the Court of Appeals determined that since the matter now had `evolved' into a postelection challenge to the voter approved initiative, Malkasian was an improper defendant." Majority at 945.) However even assuming arguendo that the majority is correct in viewing this proceeding as a preelection challenge, the question of justiciability still remains a "threshold inquiry." Coppernoll, 155 Wash.2d at 300, 119 P.3d 818. Nevertheless the majority does not address the requirement except by indirection in its discussion of Malkasian's entitlement to an award of reasonable attorney fees (which, as explained, infra, is really irrelevant to that issue). So let us consider directly the issue of justiciability for want of a proper party defendant in a preelection challenge.
¶ 66 It is perhaps ironic that the first case cited and relied upon by the majority is Coppernoll v. Reed, 155 Wash.2d 290, 119 P.3d 318. That case, like the case at bar, was a preelection declaratory judgment action challenging the propriety of placing Initiative 330 (which would limit medical malpractice awards) on the ballot. This court in a unanimous decision concluded that action must be dismissed because it was not justiciable. We *958 held the matter nonjusticiable because, whether substantively constitutional or not, the subject matter of the proposed initiative was within the legislative power. There was no justiciability problem with the parties having genuine and opposing interests which were direct and substantial "rather than potential, theoretical, abstract or academic," id. at 300, 119 P.3d 318 (quotation marks omitted), because the named party to defend that action was Sam Reed, the Secretary of Statethe public official charged with responsibility for placing the matter on the ballot. However that is emphatically not the situation here, as Paul Malkasian has no official responsibility in the electoral process whatsoever.
¶ 67 But following the majority's logic, it would have been perfectly appropriate to name any private person involved in gathering initiative signatures, or perhaps anyone who signed the initiative petition, as the sole defendant in lieu of the secretary of state. To the contrary, I would argue the doctrine of justiciability prevents this for the same reasons advanced by the Court of Appeals that would prevent a similar postelection challenge by naming a private citizen as the sole defendant. This is necessarily true because the nature of the state and analogous local initiative procedure vests in various public officials the exclusive responsibility to certify and place such matters on the ballot.
¶ 68 A citizen sponsoring a state initiative or referendum must file the proposed measure with the secretary of state. RCW 29A.72.010. The secretary of state must submit the measure to the office of the code reviser, which must recommend revisions and issue a certificate of review. RCW 29A.72.020. Upon resubmission of the measure, the secretary of state must transmit a copy to the attorney general, RCW 29A.72.020 and .040, who must prepare a ballot title and summary, RCW 29A.72.060, and file same with the secretary of state. RCW 29A.72.060. Any party may appeal only the ballot title and summary to the superior court of Thurston County for final review. RCW 29A.72.080. And see Coppernoll, 155 Wash.2d at 298 n. 5, 119 P.3d 318. Upon timely submission of the requisite number of signatures, the secretary of state must file the measure, unless it fails to satisfy procedural requirements. RCW 29A.72.150 through .170. If the secretary of state refuses to file the measure, its sponsor may apply for a writ of mandate in the superior court of Thurston county, RCW 29A.72.180, and petition the Supreme Court for review. RCW 29A.72.190. See Schrempp v. Munro, 116 Wash.2d 929, 935, 809 P.2d 1381 (1991) (holding chapter 29A.72 RCW empowers only proponents of initiative to challenge secretary of state's filing decision).
¶ 69 If a filed measure contains sufficient verified and canvassed signatures, RCW 29A.72.230, the secretary of state must certify it to the county auditors for inclusion on the ballot. RCW 29A.72.250. At this point, any citizen may apply to the Superior Court of Thurston County for a writ of mandate compellingor an injunction preventing certification of the measure. RCW 29A.72.240.
¶ 70 As the legislative scheme governing a state initiative or referendum clearly illustrates, a preelection action concerning the validity of an initiative or referendum typically takes the form of an application for a writ of mandate compelling or injunction prohibiting a public official from filing or certifying the measure. See Philadelphia II v. Gregoire, 128 Wash.2d 707, 715-16, 911 P.2d 389 (1996) (holding party challenging initiative as inappropriate for direct legislation must "seek an injunction to prevent the measure from being placed on the ballot"). See, e.g., Sudduth v. Chapman, 88 Wash.2d 247, 248-49, 558 P.2d 806 (1977) (reviewing application for writ of mandate compelling secretary of state to certify initiative); Hanson v. Meyers, 54 Wash.2d 724, 726, 344 P.2d 513 (1959) (reviewing application for injunction prohibiting secretary of state from certifying initiative); State ex rel. Evich v. Superior Court, 188 Wash. 19, 20, 61 P.2d 143 (1936) (same). Any party may challenge the attorney general's formulation of a measure's ballot title and summary and the secretary of state's decision whether to certify a measure, but only the sponsor of a measure may challenge the secretary of state's decision whether to accept and file the measure. State ex rel. *959 Donohue v. Coe, 49 Wash.2d 410, 414-15, 302 P.2d 202 (1956). Thus, opponents of a proposed measure cannot challenge its validity until and unless it is certified by the secretary of state. See Edwards v. Hutchinson, 178 Wash. 580, 584, 35 P.2d 90 (1934). And the secretary of state defends the action.
¶ 71 The Sequim Municipal Code adopts the simpler but structurally similar legislative scheme governing the proposal of a commission or code city initiative or referendum. See SMC 1.15.010 (adopting code city initiative and referendum power provided under RCW 35A.11.080 through .100, referring to commission city power under RCW 35.17.240 through .360). Any person may propose a city ordinance by initiative petition. RCW 35.17.260. The sponsor must file an initiative petition in the proper form, RCW 35.17.270, signed by sufficient registered voters of the city, RCW 35.17.260, with the city clerk. RCW 35.17.280. If the petition meets procedural requirements and contains sufficient signatures, the city clerk must certify the petition to the city council, RCW 35.17.280, which must pass the proposed ordinance or put it to the voters. RCW 35.17.260. Any taxpayer may commence an action in the superior court "against the city" challenging the city clerk's decision not to certify the petition to the council, the council's failure to pass the ordinance or put it to the voters, or the county auditor's decision whether to certify the measure for vote. RCW 35.17.290.[2] Expressly, any such preelection action must proceed "against the city" rather than against the private citizen who may support or oppose the initiative.
¶ 72 In sum, a preelection action relating to whether the initiative or referendum is properly placed on the ballot must take the form of an action compelling or an injunction prohibiting the relevant public official from filing or certifying the measure. The public officials charged with filing and certifying an initiative or referendum brought under the Sequim Municipal Code are the Sequim city clerk and the county auditor. SMC 1.15.010. Accordingly, the Sequim City Council should have named the Sequim city clerk or county auditor as the appropriate and necessary defendant.
¶ 73 If the voters approve an initiative or referendum, the measure's opponents may apply for a writ of mandate compelling or an injunction prohibiting the relevant public official from certifying the results of the vote. Wash. State Labor Council v. Reed, 149 Wash.2d 48, 53, 65 P.3d 1203 (2003). Alternatively, a party directly affected by the enacted measure may bring an action against a party charged with enforcing the measure, requesting a judgment declaring the measure unconstitutional. See, e.g., Acme Fin. Co., 192 Wash. at 107, 73 P.2d 341. Such an action may also take the form of an action against a willing and interested party, appointed by the court as the representative of all interested parties.
¶ 74 As the Court of Appeals correctly recognized, the legislative scheme governing challenges to the validity of a bond issue contemplates precisely such an action. See Malkasian, 119 Wash.App. at 661, 79 P.3d 24. Under chapter 7.25 RCW, when a governmental entity applies for a judgment confirming the validity of a proposed bond issue, RCW 7.25.010, the court must name one or more willing and interested parties as defendants representing all interested parties and require the governmental entity to pay reasonable attorney fees to defendant's counsel. RCW 7.25.020.
¶ 75 In any case, the majority contends this action remains a "preelection challenge." Majority at 949. Accordingly, it should have taken the form of an action prohibiting the city clerk or county auditor from certifying the initiative for vote or placing it on the ballot. See Philadelphia II, 128 Wash.2d at 715-16, 911 P.2d 389. Instead, the Sequim City Council brought an action against Malkasian, not the county auditor, the Sequim city clerk, or any other public official. Nor was Malkasian named as representative of all interested parties. In fact, the City Council named him as defendant in his individual capacity, not as representative of anyone. *960 He was never a willing defendant. Such an action is unprecedented, improper, and procedurally absurd.
¶ 76 Of course, any interested party may apply for a writ of mandate compelling a public official or entity to file or certify a proposed or enacted initiative or referendum, including the measure's sponsor. See, e.g., State ex rel. Berry v. Superior Court, 92 Wash. 16, 159 P. 92 (1916); State ex rel. Griffiths v. Superior Court, 92 Wash. 44, 159 P. 101 (1916); Ford v. Logan, 79 Wash.2d 147, 483 P.2d 1247 (1971); Ruano v. Spellman, 81 Wash.2d 820, 505 P.2d 447 (1973); Leonard v. City of Bothell, 87 Wash.2d 847, 557 P.2d 1306 (1976); Heider v. City of Seattle, 100 Wash.2d 874, 675 P.2d 597 (1984); Bidwell v. City of Bellevue, 65 Wash.App. 43, 827 P.2d 339 (1992); Philadelphia II, 128 Wash.2d 707, 911 P.2d 389; City of Seattle v. Yes for Seattle, 122 Wash.App. 382, 93 P.3d 176 (2004), review denied, 153 Wash.2d 1020, 108 P.3d 1228 (2005). But in such a case, the private party is the plaintiff, not the defendant.
¶ 77 However, as the majority notes, this court has on occasion entertained a challenge to a proposed or enacted initiative or referendum naming a private party as defendant in his individual capacity. Majority at 952-953. See Whatcom County v. Brisbane, 125 Wash.2d 345, 347, 884 P.2d 1326 (1994) (application for judgment declaring certified referendum invalid defended by sponsor of referendum); Snohomish County v. Anderson, 124 Wash.2d 834, 837, 881 P.2d 240 (1994) (application for judgment declaring proposed referendum invalid defended by all signatories of referendum); Maleng v. King County Corr. Guild, 150 Wash.2d 325, 329, 76 P.3d 727 (2003) (application for injunction prohibiting certification of proposed initiative defended by sponsor of initiative).[3] Concern for "judicial economy" surely compelled us to overlook such an egregious error in these few instances. Philadelphia II, 128 Wash.2d at 716, 911 P.2d 389. But in any event, none of these defendants objected to or otherwise challenged in any way the justiciability of the action. That was not an issue to be decided. But here the issue is justiciability. "In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised." Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 824, 881 P.2d 986 (1994). See also Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) (questions neither brought to a court's attention nor ruled upon are not precedential); State ex rel. Gallwey v. Grimm, 146 Wash.2d 445, 459, 48 P.3d 274 (2002) (holding "this court is not constrained to follow a decision where the opinion's holding controls an issue, but the issue was not raised in the case"). We certainly should not encourage parties to file such inappropriate actions in the future, nor should we decide this case on the merits when, as here, justiciability is properly challenged.
¶ 78 The Sequim City Counciland the majorityhas used Malkasian as if to say, "let us overwhelm this isolated private citizen, knock him out, and then, by so doing, deprive all other citizens of Sequim their day in court and the benefits of their initiative." If this is a justiciable controversy, what's next? Suppose a citizen, a group, a business, or a local unit of government believes a state statute violates the constitution. Who should they sue? Why not sue an isolated citizen activist who supported the statute? Or a legislator who sponsored it? Or any other party lacking the financial wherewithal to mount an adequate defense?
¶ 79 Most likely any such party will simply default. At least, they would if they had any sense, as few can afford to invest 10 years and vast sums of money defending a law for the sake of the indirect and tangential benefits it may afford them. But is this any way to shape public policy? Does it serve the ends of justice? The doctrine of justiciability *961 protects individuals and society alike from such mercenary tactics.
¶ 80 In sum, while a party may challenge the validity of a proposed initiative or referendum, state or local, such a challenge is valid only if filed at the proper time, in the proper form, and against the property party. The Sequim City Council could have challenged the validity of this initiative by applying for an injunction prohibiting the city clerk from certifying the initiative or the county auditor from placing it on the ballot or certifying the result of the vote. Thereafter, it could have requested a judgment declaring the enacted initiative invalid naming an appropriate official from the executive branch charged with its enforcement to defend. But it cannot bring a preelection action against a private citizen in his individual capacity.
¶ 81 Neither our legislative scheme nor our doctrine of justiciability supports the majority's decision. The result reflects only the majority's unrestrained will to obtain an end without regard for legitimate means. By this measure, of course, it triumphs.

II.

¶ Mr. Malkasian is entitled to recover his reasonable attorney fees under the common benefit rule
¶ 82 Proper party or not, Malkasian is entitled to reasonable attorney fees under the common benefit rule.[4] The Court of Appeals denied Malkasian's request for reasonable attorney fees, reasoning he might have been entitled to fees had he "secured his appointment as a representative of the City's taxpayers," but was not because "he elected to remain in his individual capacity and secure a dismissal for lack of justiciability." Malkasian, 119 Wash.App. at 664, 79 P.3d 24.
¶ 83 Malkasian attacks the use of the term "elected." Malkasian is correct that this term is inappropriate since Malkasian did not choose to be a named defendant.[5] He was the defendant at the city's election, not his own.
¶ 84 Washington follows the American Rule on attorney fees. "The American Rule on attorney fees is that attorney fees are not recoverable by the prevailing party as costs of litigation unless the recovery of such fees is permitted by contract, statute, or some recognized ground in equity." McGreevy v. Or. Mut. Ins. Co., 128 Wash.2d 26, 35 n. 8, 904 P.2d 731 (1995). Malkasian has not cited any statutory or contractual basis for recovering attorney fees. Therefore the basis, if any, must be some "recognized ground in equity." Id.
¶ 85 Malkasian analogizes to one such recognized equitable basis for awarding attorney fees: the substantial benefit/common fund ground.[6] Although this is not a case concerning preservation of assets, the rationale behind this doctrine equally applies here.
¶ 86 "[T]he power to award attorney fees `springs from our inherent equitable powers, [and] we are at liberty to set the boundaries of the exercise of that power.'" Hsu Ying Li v. Tang, 87 Wash.2d 796, 799, 557 P.2d 342 (1976) (alteration in original) (quoting Weiss v. Bruno, 83 Wash.2d 911, 914, 523 P.2d 915 (1974)). In Tang we held the substantial benefit/common fund ground did not apply because the decision benefited only the litigant, yet the court still awarded attorney *962 fees based on the equity of the individual situation.
¶ 87 The substantial benefit/common fund doctrine is recognized to provide a basis for an award of reasonable attorney fees beyond the mere creation or preservation of a monetary fund[7] where a litigant confers substantial benefits on an ascertainable class. See, e.g., Weiss, 83 Wash.2d at 912-13, 523 P.2d 915 (and cases cited therein). In Weiss the class was Washington's taxpayers, and the benefit was the halting of the disbursement of funds under an unconstitutional statute. Id.
¶ 88 Malkasian's entitlement to an award of reasonable attorney fees is most specifically based upon that prong of the doctrine illustrated by Seattle Trust & Savings Bank v. McCarthy, 94 Wash.2d 605, 612-13, 617 P.2d 1023 (1980).[8] There the bank and trust corporation sought a declaratory judgment to establish the constitutionality of an amendment to its articles of incorporation which removed the preemptive right of shareholders to purchase unissued shares. McCarthy was named defendant to represent the rights of minority shareholders potentially prejudiced by the action. The corporation ultimately prevailed. This court then considered whether or not McCarthy should be awarded his reasonable attorney fees on the appeal which he lost. We answered yes because the suit was brought to obtain an adjudication for the benefit of the corporation, notwithstanding that the defendant had a substantial financial interest to protect.
¶ It was in the interest of the corporation that the question be vigorously defended, in order to resolve questions concerning the legality of amendment of shareholders' rights. To achieve this end, a decision of this court was necessary, since a trial court judgment would be of little precedential value. If the defendant is forced to pay his attorney fees on appeal, the reasonableness of which has not been questioned, he will have conferred an essentially gratuitous benefit on the corporation.
¶ Id. at 612, 617 P.2d 1023. Of particular importance to the case at bar, the unanimous opinion continued:
While it is the general rule that attorney fees will be allowed only where provided by statute or contractual obligation, we have recognized limited exceptions to this rule, among them the rule that equity may allow reimbursement of attorney fees from a fund created or preserved by a litigant for the benefit of others as well as himself. This rule we said in Weiss v. Bruno, 83 Wash.2d 911, 523 P.2d 915 (1974), has been broadened to include situations where a litigant confers some other substantial benefit on an ascertainable class, such as corporate stockholders. The right to award attorney fees in limited, special situations, we said, springs from our inherent equity powers.
*963 ¶ It is true that here the defendant was cast in the role of apparently opposing, rather than defending, the corporate interest. . . . Under the peculiar circumstances of the case, the very act of diligently opposing served to benefit the corporation, as it aided in clarifying the issue and brought into focus the need to abandon a legal doctrine which threatened the corporation's health and growth. The defendant performed his function as a person named by the plaintiff to represent the class of minority shareholders, in order to facilitate the declaratory judgment which it sought. Under these circumstances, the plaintiff has already recognized that it should pay the defendant's attorney fees at the trial level. To do complete equity, it must also pay them here. It is so ordered.
¶ Id. at 612-13, 617 P.2d 1023.
¶ 89 So too in the case at bar. The City of Sequim had an arguably legitimate interest to attempt to remove an initiative from the ballot or invalidate it once passed. To vindicate this interest the City of Sequim named Mr. Malkasian sole defendant in an apparent effort to preclude the rights of all others by obtaining a favorable declaratory judgment. The equitable doctrine therefore allows an award of reasonable attorney fees to Mr. Malkasian because his opposition "served to benefit" the municipal corporation.
¶ 90 By defending the validity of an adopted city ordinance, Malkasian was not merely involuntarily representing the sponsors of the initiative, or the 78 percent of voters who approved it, but the entire citizenship of the city. Malkasian provided the same service to the citizens of Sequim that the city attorney provides when he defends an adopted city ordinance in a declaratory judgment actionat taxpayer expense. This defense benefited the ascertainable class comprised of the citizens of Sequim and justifies an award to Malkasian of his reasonable attorney fees and expenses regardless of result.[9]

Conclusion
¶ 91 We accepted review of a Court of Appeals decision which directed this action be dismissed for lack of justiciability. But our majority seems unable to muster any argument why the reasoning of the Court of Appeals was wrongonly its result is not to its liking. Malkasian is also entitled to recover his reasonable attorney fees.
¶ 92 I dissent.
Dissenting: ALEXANDER, C.J., J.M. JOHNSON, J.
NOTES
[1] According to its web site, in 1913 Sequim became an incorporated town. The city of Sequim has approximately 4,928 residents. The city utilizes the council/manager form of government. The city council of Sequim is comprised of seven elected members and positions are considered part-time. Many council members have full-time careers in addition to their duties on the city council. See official gov't web site, city of Sequim, http://www.ci.sequim.wa.us.
[2] Under RCW 35.41.030, if the legislative body decides to do so, it can authorize the issuance of revenue bonds by ordinance. The ordinance must be ratified by voters (i.e., subject to a vote) only "in those instances where the original acquisition, construction, or development of such facility or utility is required to be ratified by the voters under the provisions of RCW 35.67.030 and 35.92.070." RCW 35.41.030. Thus, the legislature has already determined which types of revenue bonds require voter ratification and which do not. Contrary to RCW 35.41.030, however, the proposed initiative added a voter ratification requirement for bonds not included within the exceptional circumstances set forth in RCW 35.67.030 and RCW 35.92.070.
[3] Malkasian referred to Partners in Government in numerous ways in this litigation, including identifying it as a committee, a citizens' organization, an unincorporated association, and a group. However, it is undisputed that Partners in Government is unincorporated, and Malkasian has never asserted that Partners in Government had a legal identity separate from Malkasian and thus could or should be a proper party in litigation. The record contains the following:

1. At the bottom of each page of signatures for the petition for the proposed initiative was the following language:
"Return signed petitions by October 23, 1996 to: Paul Malkasian, chair, Partners in Government, 1343 E. Washington St. Sequim, WA 98382." CP at 304.
2. Paul Malkasian delivered the initiative petition to the city clerk of the City of Sequim and the petition was delivered attached to a letter on letterhead of "Partners in Government, Paul Malkasian, Chairperson." CP at 33.
3. In the original complaint for declaratory judgment and injunction filed by the City of Sequim, the city alleged that "Paul Malkasian is the circulator, sponsor and presenter of an initiative petition, designated by the sponsor as, `The Rate payers Responsibility Act' filed with the City." CP at 296.
4. In his answer to complaint and first amended answer and counterclaim, Malkasian denied that he was the circulator, sponsor and presenter of the initiative but admitted that "Paul Malkasian is a member of Partners in Government, the entity responsible for the initiative petition." CP at 290; 189.
5. In his cross motion for summary judgment, Malkasian said, "Malkasian seeks summary judgment that the petition for referendum and the petition for initiative presented by him to the City of Sequim on October 7, 1996 are each within the scope of the initiative power, and an order directing the City to place both petitions on the ballot for the next regularly scheduled election in the City of Sequim." CP at 182 (emphasis added).
6. In his motion to dismiss after the initiative was passed by the voters, Malkasian states, "Malkasian was a leader in the successful 1996 signature-gathering effort for the initiative." CP at 6; Resp't's Suppl. CP at 70.
[4] As discussed above, the city had earlier appealed the trial court's ruling that the initiative is within the scope of the initiative power. In its cross-petition here, the city again raises its claim that the initiative is beyond the scope of the initiative power and, based on the Court of Appeals' treatment of this case as a postelection case, the city also claims that the ordinance conflicts with the uniformity requirements of state law and impairs contracts.
[5] See footnote 1, infra.
[6] Because the city has adopted the council-manager form of government, its mayor has limited powers. Its mayor is not separately elected and is one of the elected city council members. Thus, the legislative body of the city is primarily its city council, with limited powers granted to its mayor and city manager. See, e.g., ch. 35A.13 RCW.
[7] Malkasian contends that the Court of Appeals erred in concluding that the city has standing to challenge an ordinance postelection under chapter 7.24 RCW. Because we hold that the initiative exceeded the initiative power and is therefore invalid, we need not decide whether the city had standing to raise postelection challenges to the ordinance passed through the initiative process. Additionally, we need not reach the city's contention that the ordinance conflicts with the uniformity requirement of the state law or impairs contracts.
[1] City of Sequim v. Malkasian, 119 Wash.App. 654, 662, 79 P.3d 24 (2003).
[2] "If the clerk finds the petition insufficient or if the commission refuses either to pass an initiative ordinance or order an election thereon, any taxpayer may commence an action in the superior court against the city . . . ." RCW 35.17.290.
[3] The majority also cites Seattle Building & Construction Trades Council v. City of Seattle, 94 Wash.2d 740, 745, 620 P.2d 82 (1980), in support of the premise a party may bring an action challenging a proposed initiative or referendum against a private party in its individual capacity. In fact, this case concerned an application for an injunction prohibiting the certification of a proposed initiative, properly brought by a private party opposed to the initiative and filed against the city government charged with submitting the initiative to vote.
[4] The majority mischaracterizes the ground for an award of unreasonable attorney fees as the claim Malkasian is not a proper party. Majority at 952.
[5] Regardless of whether Malkasian "elected" to be dismissed from the case on justiciability grounds, the City forced Malkasian to defend the ordinance by naming him as sole defendant and continuing to prosecute the case after Malkasian notified the City that he was an improper defendant.
[6] "In the absence of a contract or a statute, a recognized Washington exception to the general rule of no attorney fee recovery is the `common fund' exception, which applies where the litigant created or preserved a specific monetary fund for the benefit of others as well as himself, from which fund equity may allow reimbursement of attorney fees. This exception has been broadened to include situations where a litigant confers a substantial benefit on an ascertainable class, such as corporate stockholders." Interlake Porsche & Audi, Inc. v. Bucholz, 45 Wash.App. 502, 521, 728 P.2d 597 (1986).
[7] As the majority points out, a number of prior decisions have indeed applied the doctrine to the creation or preservation of monetary funds or other benefits, even when a fund did not exist. For example Bowles v. Washington Department of Retirement Systems, 121 Wash.2d 52, 847 P.2d 440 (1993) was a class action against the State Department of Retirement Systems by members of a public employees retirement system plan. Members sought declaratory and injunctive relief, claiming the Department did not properly calculate retirement pensions by failing to include lump sum payments of accrued but unused vacation and sick leave benefits. The plaintiff class prevailed and was awarded substantial reasonable attorney fees under the common fund/common benefit theory against the State although the action did not result in any money judgment but only declaratory/equitable relief. The plaintiffs argued that their suit created or preserved the fund because the suit secured additional pension benefits for many other Public Employees Retirement System I members, and this court agreed. However, neither Bowles nor most of the other cases cited concerned the claim that representative defendant in an action such as this would also be entitled to an award of reasonable attorney fees under the equitable doctrine.
[8] The equitable doctrine has been previously applied in cases where the right to future pension benefits was gained, Bowles v. Department of Retirement Systems, 121 Wash.2d 52, 847 P.2d 440 (1993), where two legislative acts involving financial aid were found to be unconstitutional, Weiss v. Bruno, 83 Wash.2d 911, 523 P.2d 915 (1974), and where a cemetery was maintained. German Evangelical St. Marcus Congregation of St. Louis v. Archambault, 404 S.W.2d 705 (Mo. 1966).
[9] Although RCW 7.25.020 is not directly applicable because it relates solely to the validity of actual bonds, analogy to this statute also supports Malkasian's claim. See Malkasian, 119 Wash.App. at 662, 79 P.3d 24. As was the case in Seattle Trust & Savings Bank v. McCarthy, this entitlement is not dependent on the outcome of the litigation or the fault of a party, if any.